In the Matter of the Claim of FRANK GORMELEY, Appellant, *v.* NEW YORK DAILY NEWS et al., Respondents. WORKMEN'S COMPENSATION BOARD, Respondent.

Third Department, April 29, 1968.

*Rowen & Downes* (*Saul C. Downes* of counsel), for appellant.

*Bernard F. Farley* and *Joseph M. Soviero* for New York Daily News and another, respondents.

*Louis J. Lefkowitz, Attorney-General* (*Morris N. Lissauer* and *Daniel Polansky* of counsel), for Workmen's Compensation Board, respondent.

HERLIHY, J. Appeal by the claimant from a decision of the Workmen's Compensation Board which held that claimant did not have an occupational loss of hearing within the meaning of the Workmen's Compensation Law. The board further found " that the rules and criteria prescribed for the measurement and determination of loss of hearing are within the power of the board and are highly salutary and eminently reasonable."

The appellant on this appeal challenges the constitutionality of article 3-A of the Workmen's Compensation Law captioned " Occupational Loss of Hearing " and the rules formulated by the board which created risk criteria and standards for the measurement and determination of occupational loss of hearing. This article is distinguishable from the hearing loss provisions contained in section 15 of the Workmen's Compensation Law in that it relates solely to loss of hearing resulting from employment where the employee is exposed to harmful noise.

Section 49-aa of the article declares that loss of hearing resulting from exposure to industrial noise has created a problem of grave concern to the Legislature and that compensation for such loss, taking into consideration the public interest, can best be served by the conditions and limitations contained in the said article.

The facts are not in dispute. The claimant had worked for his employer for approximately 44 years when he retired in August, 1964. Approximately two years thereafter, April 19, 1966, he filed a claim for industrial loss of hearing, pursuant to the above-stated article, and after medical examinations, as prescribed by its regulations, the board determined that pursuant to the formula therein set forth, the claimant's loss of hearing

was outside the frequency range used for (conversational) speech and therefore, found that the claimant had not sustained a compensable hearing loss.

The contentions of the claimant are basically directed to the restriction of compensation payments (schedule loss) to the hearing range of conversational speech. It is readily apparent that this claimant has been in no way adversely affected by article 3-A except as he has been limited solely to proof of loss within the tonal ranges set forth in the board's regulations pursuant to section 49-gg. The broad constitutional objections of the claimant as to article 3-A have no effect upon his rights in the context of this case except as his right to a schedule loss has been limited to conversational speech hearing and certain tonal ranges.

In 1948 the Court of Appeals in *Matter of Slawinski* v. *Williams & Co.* (298 N. Y. 546) affirmed a board's finding that the claimant suffered an occupational disease — tinnitus — resulting from his work (a forge shop) and that albeit there was no lost time or any loss of earnings, the claimant was entitled to a schedule award for such loss of hearing. This holding became a matter of concern and resulted in the board appointing a Committee of Consultants on occupational loss of hearing. A report of the said committee was made in 1953 which in part stated: '' The ability to understand speech is universally regarded as the aspect of the sense of hearing that is of most importance in social and economic life. For compensation purposes, therefore, this aspect of hearing is also the one of most importance.'' (See Appendix A of the report: 12 NYCRR 350.1.) However, as of the date of the report, no agreement had been reached on the best manner of determining the ability to understand speech.

In 1958 the Legislature enacted article 3-A and as part thereof section 49-gg, which, *inter alia,* contained a directive that expert recommendations be secured as to specific subjects and further provided: '' The workmen's compensation board, after giving due consideration to such findings and recommendations, is authorized to adopt reasonable rules, not inconsistent with the provisions of this chapter and the labor law, prescribing damage risk criteria and standards for the measurement and determination of occupational loss of hearing. Pending the formulation and adoption by the workmen's compensation board of such rules, claims for occupational loss of hearing shall be determined upon the basis of the tentative standards and criteria contained in the report, dated December, nineteen hundred fifty-three of the committee appointed by the workmen's compensa-

tion board and entitled ' Report of the Committee of Consultants on Occupational Loss of Hearing ' ".

To say that the methods adopted by the Legislature in attempting to solve this social problem are unusual is to admit that the procedure is out of the ordinary.

A report of the Committee of Consultants was made to the Workmen's Compensation Board in 1960. The report contained a formula for the determination of hearing impairment caused by exposure to harmful industrial noise. The formula set the tonal ranges for the hearing levels of conversational speech and the method of computing the percentage of loss within such ranges for the purpose of schedule losses. The board adopted this report and by appropriate rules and regulations made the recommended formula the mode of procedure of securing compensation under article 3-A.

I. We determine that article 3-A is not unconstitutional.

The genesis of the Workmen's Compensation Law is a constitutional amendment (N. Y. Const., art. I, § 18) duly adopted by the People of this State. This amendment gave to the Legislature the right to enact laws for the protection of the lives, health or safety of employees, subject to certain exceptions not pertinent to the present consideration. It might be paraphrased by stating that the Legislature was given a carte blanche mandate to protect the rights of the working man as it, in its wisdom, saw fit. (See *Matter of Toomey* v. *New York State Legislature,* 2 N Y 2d 446, 448.) In providing for certain losses to the employee due to injuries, diseases and dangers of his employment, which legislation under certain conditions gave him an absolute right to compensation, the Legislature could take away from the employee certain other rights of action that he had at law, and an employee has to bear the loss of those rights and be compensated therefor by the absolute right to payment under certain conditions arising out of the same injuries, diseases and dangers (*del Busto* v. *Du Pont de Nemours & Co.,* 167 Misc. 920, 923, affd. 259 App. Div. 1070, mot. for lv. to app. den. 284 N. Y. 817).

That the Legislature was concerned with a difficult problem seems undisputed. When an employee, working in a noisy form of employment, made a claim for compensation, there was no adequate method for the measurement of the impairment or establishment of the relationship of such impairment with the employment prior to the enactment of article 3-A, as best exemplified in *Matter of Slawinski* (298 N. Y. 546, *supra*). The possible consequences and the resulting social and economic dangers were quickly recognized by the Workmen's Compensa-

tion Board and by the Legislature when called to its attention. It should be observed that in all of the studies that were made in attempting to solve this kind of problem, there were representatives of the State, the employer and representatives on behalf of the employee.*

The courts do not interfere with the judgment of the Legislature unless it appears that the failure to apply the legislation to all who might come within its effect is palpably unjust and without reason (see 9 N. Y. Jur., Constitutional Law, § 295).

"'Assuming that all [similarly afflicted] might be included, on judicial review, a classification is not held to be bad because it is not comprehensive.' (*People ex rel. Bryant* v. *Zimmerman,* 241 N. Y. 405, 412.) 'A class may lawfully be restricted if the lines defining the restriction are not arbitrary altogether and the rule to be applied within them is uniform and even.' (*People* v. *Teuscher,* 248 N. Y. 454, 459.)" (*Matter of Williams* v. *Walsh,* 289 N. Y. 1, 8.)

There was a reasonable basis for the enactment of article 3-A, which is neither arbitrary nor illegal as contended.

II. Section 49-gg is not unconstitutional as applied to this claimant.

Section 49-gg, when reasonably construed, establishes that for compensation purposes, loss of hearing shall be based upon conversational hearing — every day speech under every day conditions. This fact appears to be further and conclusively established as a result of the recommendations of the Committee of Consultants furnished to the board in 1960 and adopted by it, which supplemented the 1953 report by setting forth a detailed method for the determination of such loss of hearing.

The due process question herein can be rejected on the authority of *Cifolo* v. *General Elec. Co.* (305 N. Y. 209) where the issue was whether restricting workmen's compensation benefits to *totally* disabled silicosis sufferers only was constitutional. The court held such restriction to be clearly constitutional, saying (p. 215): "It has never been doubted that, when an employment is covered into the act and awards are authorized for injuries and diseases arising out of and in the course of such employment, the fixation of the benefits, in dollars and limitations of periods of payment, is solely up to the Legislature. Thus, the New York statute since its original enactment has, in its section 12, forbidden awards, in some cases, for the first seven days (originally fourteen days) of disability (see *Matter*

---

*For a full narrative account of the problem, see 1 A Larson, Workmen's Compensation Law, § 41.40, pp. 622.122–622.133.

*of Gorle* v. *Joy Co.*, 230 N. Y. 595). If failure to award compensation for partial disability resulted in unconstitutionality, then, under plaintiffs' theory, section 12 would be subject to the same infirmity, and every injured workman would have a common-law suit for the first seven days of his disability. Workmen's compensation laws balance benefits. The disabled workman loses some of his former rights but gains some new ones. If the particular deprivation with which we are dealing here be harsh or inconsistent with enlightened social policy then it is up to the Legislature to improve the law. There is nothing the courts can do about it."

If the Legislature may validly deny benefits to those partially disabled by silicosis, then it seems it may also deny benefits to those who suffer loss of hearing outside the range of every day speech.

The fact, as argued by the appellant, that a person suffering loss of hearing as a result of a traumatic injury is entitled to benefits where the same loss of hearing under article 3-A is not compensable does not make the law unconstitutional because of unfairness or discrimination. If there is inequity or discrimination in the treatment of a claimant under article 3-A, there is also the same inequity and discrimination under section 15 (subd. 3, par. m). Under that section, a complete loss of hearing is governed by the total tonal range of hearing, while under the section here in question, a complete loss of hearing is governed by a limited tonal range and then only by 82% of the actual loss in that range. In other words, the claimant is benefited because under 49-gg he may receive a 100% schedule loss upon a factual showing of actual loss which can be substantially less in fact than the range for 100% under section 15.

III. The enactment of section 49-gg was not an unlawful delegation of legislative authority.

In this respect, it is important to again take note of the fact that the section itself provides for recommendations by experts and that pending the adoption of rules by the board, the 1953 Report of the Committee of Consultants shall be the basis for determining standards and criteria of occupational loss of hearing resulting from noisy employment. The administration by the board—for example, the present decision—has stayed explicitly within the cocoon of the section.

The problem here is in some respects comparable with that considered by the Court of Appeals in *Matter of City of Utica* v. *Water Control Bd.* (5 N Y 2d 164, 168–169) where the court said: " The Legislature may constitutionally confer discretion upon an administrative agency only if it limits the field in which

that discretion is to operate and provides standards to govern its exercise. (See, e.g., *Packer Collegiate Inst.* v. *University of State of N. Y.*, 298 N. Y. 184, 189–190; *Noyes* v. *Erie & Wyoming Farmers Co-op. Corp.*, 281 N. Y. 187, 194; *Matter of Small* v. *Moss*, 279 N. Y. 288, 295, 298–299; *Panama Refining Co.* v. *Ryan*, 293 U. S. 388; see, also, 1 Benjamin, Administrative Adjudication [1942], p. 294.) That does not, however, mean that a precise or specific formula must be furnished in a field ' where flexibility and the adaptation of the [legislative] policy to infinitely variable conditions constitute the essence of the program.' (*Lichter* v. *United States*, 334 U. S. 742, 785.) It is enough if the Legislature lays down ' an intelligible principle ', specifying the standards or guides in as detailed a fashion as is reasonably practicable in the light of the complexities of the particular area to be regulated. (See *Lichter* v. *United States, supra*, 334 U. S. 742, 785; *American Power Co.* v. *S.E.C.*, 329 U. S. 90, 105; *Buttfield* v. *Stranahan*, 192 U. S. 470, 496; *Texas Co.* v. *Montgomery* [U. S. Dist. Ct., E. D. La.], 73 F. Supp. 527, 533–534, affd. 332 U. S. 827; *Matter of Marburg* v. *Cole*, 286 N. Y. 202, 212; *Johnson* v. *Parsons*, 207 Misc. 107, 113–114, affd. 285 App. Div. 601.) Obviously the Legislature cannot ' constitutionally [be] required to appraise beforehand the myriad situations to which it wishes a particular policy to be applied and to formulate specific rules for each situation. Necessity therefore fixes a point beyond which it is unreasonable and impracticable to compel [the Legislature] to prescribe detailed rules '. (*American Power Co.* v. *S.E.C., supra*, 329 U. S. 90, 105.) "

The other issues and points raised by the appellant have been considered, but they require no detailed comment in arriving at our decision.

The decision of the Workmen's Compensation Board should be affirmed, without costs.

GIBSON, P. J., REYNOLDS, AULISI and GABRIELLI, JJ., concur.

Decision affirmed, without costs.