METHODIST HOSPITAL OF BROOKLYN et al., Appellants-Respondents, v STATE INSURANCE FUND et al., Respondents-Appellants, and EDWARD V. REGAN, as Comptroller of the State of New York, et al., Respondents.

First Department, June 26, 1984

368

APPEARANCES OF COUNSEL

*Robert B. Davidson* of counsel (*Baker & McKenzie,* attorneys), for appellants-respondents.

*Richard G. Liskov* of counsel (*Melvyn R. Leventhal* with him on the brief; *Robert Abrams, Attorney-General,* attorney), for respondents.

*Harold L. Fisher* of counsel (*Raymond C. Green* and *Fisher & Fisher,* attorneys), for State Insurance Fund and others, respondents-appellants.

*Richard L. O'Hara, Robert A. Kennedy* and *David Westermann, Jr.,* of counsel (*Colleran, O'Hara, Kennedy & Mills, P. C.,* attorneys), for New York State AFL-CIO, *amicus curiae.*

### OPINION OF THE COURT

ALEXANDER, J.

By the enactment of chapter 55 of the Laws of 1982, the Workers' Compensation Law was amended to mandate that the State Insurance Fund (SIF or Fund) transfer $190 million to the general fund of the State by March 1, 1983, and to provide for future transfers. A new section 87-f of the Workers' Compensation Law provided for an annual "dry appropriation" of $190 million for each year after 1983. The SIF would include the $190 million in its budget request and the Governor was required to include the request in his budget bill. The $190 million would be appropriated for the SIF in the State budget, but none of this appropriation would be actually paid, unless the following year's State budget failed to make the same appropriation. The amendment further provided that such appropriation was to be deemed an "admitted asset of the state insurance fund" (Workers' Compensation Law, § 87-f, subd 2) and any transfer of moneys by the State Insurance Fund to the State's general fund was to be deemed a "proper and prudent legal undertaking for any state officer with the responsibility for the custody or the investment of the assets of the fund" (Workers' Compensation Law, § 87-f, subd 2). Other provisions of chapter 55 immunized and indemnified State officers from liability for such transfers.

In order to maintain the solvency of SIF following the transfer of these moneys to the general fund, chapter 404 of the Laws of 1982, provided, among other things, for the first $190 million appropriation. None of this appropriation could be expended, however, if other assets of SIF,

which were not part of reserves for claims or losses, were available. Moreover, a certificate of approval had to be issued by the Director of the Division of the Budget in order for any expenditures to be made from such appropriation.

The plaintiffs, Methodist Hospital of Brooklyn (Methodist), Accident Prevention & Safety League, Inc. (Accident), and Nagel, Inc., are employers insured by SIF under workers' compensation insurance policies. In a declaratory judgment action commenced in April, 1982, they challenged the constitutionality of this legislation on several Federal and State grounds. They allege that it constitutes an impairment of their contractual obligations with the SIF and thus violates section 10 of article I of the United States Constitution; that it provides for a taking of private property without due process of law in contravention of the guarantee of the Fourteenth Amendment to the United States Constitution and section 6 of article I of the State Constitution; that it constitutes an unlawful intrusion upon the discretion of State officials in violation of section 3 of article V of the State Constitution; that it constitutes a loan or gift of the State's credit in violation of section 8 (subd 1) of article VII of the State Constitution; that the legislation creates a debt of the State in violation of sections 9 and 11 of article VII of the State Constitution; and that the legislation constitutes an unlawful appropriation scheme in violation of section 7 of article VII of the State Constitution. They also contend that because interest will not be paid on the transferred funds, SIF's income will be lowered, resulting in a loss to the Fund. In order to offset such loss, they argue, SIF will have to raise premiums to policyholders, which raises would constitute a *de facto* tax that violates section 22 of article III of the State Constitution.

The action is brought against the State Insurance Fund, its Commissioners, its Executive Director and its Supervising Actuary (collectively, the Fund or SIF) and also against the State of New York and the Commissioner of Taxation and Finance (collectively, the State). The State answered denying the constitutional challenges alleged by plaintiffs. SIF's answer essentially denies information and belief

with respect to the constitutional challenges alleged in the complaint as well as the cross claims against the State for a declaratory judgment as to the constitutionality of chapters 55 and 404 of the Laws of 1982.

Following joinder of issue, plaintiffs moved for summary judgment. SIF joined in and supported that motion. In addition to adopting the arguments advanced by plaintiffs, SIF asserted that its funds are "fiduciary funds" under State law and that their policies of insurance constitute contracts under which the policyholders have present, tangible and vested property interests which are held for the benefit of the insureds. The State cross-moved for summary judgment. In a thoughtful and careful opinion, Special Term denied the plaintiff's motion and granted the State's cross motion, declaring chapters 55 and 404 of the Laws of 1982 constitutional (117 Misc 2d 178). We agree and therefore affirm.

We begin our discussion, as did Special Term, with the acknowledgment that "[t]here is a simple, but well-founded, presumption that an act of the Legislature is constitutional and this presumption can be upset only by proof persuasive beyond a reasonable doubt (*Montgomery v Daniels,* 38 NY2d 41; *Matter of Malpica-Orsini* [36 NY2d 568])." (*Hotel Dorset Co. v Trust for Cultural Resources,* 46 NY2d 358, 370.) "The burden of showing the unconstitutionality of a statute, or [*sic*] course rests on the party which attacks its validity (*Matter of Van Berkel v Power,* 16 NY2d 37, 40) and every legislative enactment carries a strong presumption of constitutionality (*Borden's Co. v Baldwin,* 293 US 194, 209; *Patterson v University of State of N. Y.,* 14 NY2d 432, 438)". (*Cook v City of Binghamton,* 48 NY2d 323, 330.) Indeed, as Judge Cooke (now Chief Judge) pointed out in his dissent in *Sgaglione v Levitt* (37 NY2d 507, 515) "Every legislative enactment is clothed with an exceedingly strong presumption of constitutionality * * * accompanied by a further presumption that the Legislature has investigated and found facts necessary to support the legislation * * * The party alleging unconstitutionality has a heavy burden, one of demonstrating the infirmity beyond a reasonable doubt, and only as a last resort will courts strike down legislative enactments on the ground of unconstitutionality".

Critical to the validation of plaintiffs' claims of unconstitutionality is a determination of the status of the State Insurance Fund and the nature of the interest, if any, of the plaintiffs in the surplus moneys of the Fund.

It is clear, as the courts have consistently held, as the Legislature no doubt was well aware, that the State Insurance Fund is a State agency. After considering the purposes and functions of the Fund in the light of its origin and development and examining the structure of the Fund, this court, long ago, concluded that the Legislature intended to shelter the Fund beneath the mantle of the State's sovereign immunities, and held that "the inextricable meshing of the funds into the basic administration of the Workmen's Compensation Law and its control and direction by the State, reflect a legislative intent to make the fund a State agency with the sovereign powers claimed [by the State Insurance Fund]". (*Matter of State Ins. Fund v Boyland,* 282 App Div 516, 523, affd [no opn] 309 NY 1009.) And while it may be true that *Boyland* concerned a somewhat narrow question of whether or not the property of the Fund was exempt from property tax, we noted in *Boyland* (at p 524) that "A number of decisions have held, in various contexts, that the fund is a State agency". We cited *Cardinal v State of New York* (304 NY 400 [holding that an action on an insurance policy issued by the State Insurance Fund was properly brought against the State itself, in the Court of Claims]) and *Skakandy v State of New York* (188 Misc 214, affd 274 App Div 153, affd 298 NY 886 [holding that tort actions against Commissioners of the State Insurance Fund must be brought in the Court of Claims because such Commissioners are officials and agents of the State].) (See, also, *Matter of Cahill v Tremaine,* 245 App Div 773, affd [no opn] 269 NY 573 [compensation of SIF employees subject to legislative reduction since paid from State moneys]; *Commissioners of State Ins. Fund v Rosenshield,* 179 Misc 180 [SIF not subject to suit in municipal court because it is a State agency]; *Commissioners of State Ins. Fund v Lapidus,* 182 Misc 368 [Former Civ Prac Act, § 292-a inapplicable to require examination before trial of SIF, a State agency]; *Commissioners of State Ins. Fund v Dinowitz,* 179 Misc 278 [SIF Commissioners entitled to trial

preference because of State officer status]; *Solomon v Kennedy,* 38 Misc 2d 1090 [SIF cannot be impleaded in Supreme Court because it is a State agency]).

Appellant's citation to *Commissioners of State Ins. Fund v Low* (3 NY2d 590) to support the argument that the Fund should not be considered a State agency in the context of the present litigation is not persuasive.

As made clear in that case by the Appellate Division: "[T]he legislature considered the fund to be the real owner of any subrogated action" and "intended the fund to be treated *for all insurance purposes* the same as a private carrier." (*Commissioners of State Ins. Fund v Low,* 285 App Div 525, 528, 529; emphasis added.) The Court of Appeals, in affirming the denial of the motion to dismiss the Fund's complaint, based on a collateral estoppel defense, observed that "while it is not a separate corporation and while it is an agency of the State in one sense, [the Fund] is nevertheless treated by the statutes as a separate insurance business * * * and that, especially in *litigations,* it is considered to be an entity separate from the State itself." (*Commissioners of State Ins. Fund v Low,* 3 NY2d 590, 595, *supra;* emphasis added.) In the circumstances of that case, the Court of Appeals appropriately found (p 596) that there was "no particular pertinence here of *Matter of State Ins. Fund v. Boyland* (300 N.Y. 1009)".

We treat with the Fund here, however, not for "insurance purposes" or "in litigation" as the owner of a subrogated claim, but rather, in respect to the exercise of the sovereign power of the State in respect to a State agency. Indeed, the very nature and structure of the SIF bespeaks of its identity as a State agency. All of its eight Commissioners, including the *ex officio* members, the State Commissioner of Labor and the State Commissioner of Health, are appointed by the Governor, with the advice and consent of the Senate. All of its top executive officers, the executive director, the general attorney, the secretary and medical director are members of the exempt class of civil service and are appointed by the Commissioners for fixed terms. All other employees are subject to civil service requirements in respect to appointment, promotions and transfers. (Cf. *Collins v Manhattan & Bronx Surface Tr.*

*Operating Auth.,* 62 NY2d 361.) The Commissioner of Taxation and Finance is the custodian of the moneys and investment assets of the Fund and has the authority to deposit any portion of the Fund's moneys, not needed for immediate use, in the manner and subject to all provisions of law respecting the deposit of other State funds.

Moreover, there can be no doubt "that the Workmen's Compensation Law blueprints the administration of an indubitable governmental function, and that the fund is a primary and essential actor in such administration "(*Matter of State Ins. Fund v Boyland, supra,* p 521). The statutory provisions respecting the composition of the Fund, discussed above and the further requirement of the submission of quarterly estimated budgets by the Fund to the Director of the Budget for his approval with the additional requirement of his approval for administrative expenditures in excess of those specified in the budget, the requirement that none of the funds of the SIF may be paid, expended or refunded except upon audit by the Comptroller, make clear that "the Legislature intended to integrate the fund as a necessary and integral part of a carefully planned and developed structure for the administration of the Workmen's Compensation Law; and that it designedly lodged this entire structure in the State Department of Labor." (*Matter of State Ins. Fund v Boyland,* 282 App Div 516, 523, *supra.*)

Any residual doubt as to the status of SIF as a State agency subject to the broad scope of the Legislature's power to enact laws concerning workers' compensation, is dispelled by section 18 of Article I of the New York Constitution which provides, in pertinent part "Nothing contained in this constitution shall be construed to limit the power of the legislature to enact laws for the protection of the lives, health, or safety of employees". (*Crosby v State of New York Workers' Compensation Bd.,* 57 NY2d 305; *Matter of Schmidt v Wolf Contr. Co.,* 269 App Div 201, affd 295 NY 748; *Barrencotto v Cocker Saw Co.,* 266 NY 139; *Matter of Gormeley v New York Daily News,* 30 AD2d 16, affd 24 NY2d 867.) And indeed, the Legislature has heretofore exercised its power over the SIF and the disposition of moneys of the Fund. The SIF was required by legislative

enactment in 1975 to invest its funds in obligations of the New York City Municipal Assistance Corporation, the City of Yonkers and certain State public benefit corporations. (See Workers' Compensation Law, §§ 87-a, 87-b, 87-c.) These mandated investments have never been challenged and reinforce the fact that SIF funds are State funds (*Matter of Cahill v Tremaine,* 245 App Div 773, affd [no opn] 269 NY 573, *supra*) subject to the control of the Legislature. The fact that these legislative mandates referred to "investments" of SIF funds, as opposed to a transfer to the general fund in no way diminishes the power of the Legislature to exercise control of SIF and its funds.

Plaintiffs argue, however, that even if the SIF is a State agency, the challenged legislation is nonetheless an outright seizure of funds held by the State in a "fiduciary" capacity, which are not raised by taxation, but are funds in which they, as policyholders have a beneficial property interest deriving both from their policies of insurance and the specific covenants set forth in the Workers' Compensation Law. Thus, they contend that the challenged legislation takes their property without compensation in contravention of the Fourteenth Amendment to the United States Constitution and section 6 of article I of the New York State Constitution, impairs their contractual obligations with the SIF and violates various other provisions of the New York State Constitution.

Special Term appropriately rejected these arguments, as do we. Turning first to the arguments addressed to claimed violations of the New York State Constitution, we observe that the sweep of section 18 of article I of the State Constitution is extraordinarily broad and has been held to insulate the Workers' Compensation Law and legislative enactments in respect thereto from claims of violations of other provisions of the State Constitution. (*Crosby v State of New York, Workers' Compensation Bd., supra; Matter of Schmidt v Wolf Contr. Co., supra; Barrencotto v Cocker Saw Co., supra; Koutrakos v Long Is. Coll. Hosp.,* 47 AD2d 500, affd 39 NY2d 1026.) In addition, it has long been clear that the Legislature retains broad powers over the Executive under the State Constitution subject to such limita-

tions as are specifically set forth in the Constitution (art V, § 3; *Stanton v Board of Supervisors,* 191 NY 428) none of which limitations are violated by the challenged legislation.

■ Thus, the claim that chapters 55 and 404 implicitly create a loan or gift of the State's credit in violation of section 8 (subd 1) of article VII of the State Constitution is without merit. Initially, it is noted that the Fund is not an "individual, or public or private corporation or association, or private undertaking" (NY Const, art VII, § 8, subd 1). Moreover, as pointed out earlier, the Fund is itself a State agency. Therefore, this provision does not apply to it. (*Board of Supervisors v State of New York,* 153 NY 279.) The Court of Appeals pointed out in *Wein v Levitt* (42 NY2d 300, 306) that: "That provision [NY Const, art VII, § 8, subd 1] seeks to prevent the State from loaning its credit to a public corporation with the concomitant possibility that the State might ultimately pay the corporation's obligations".

■ The contention that chapter 55 creates a debt from the State to the Fund in violation of sections 9 and 11 of article VII of the New York Constitution is likewise without merit. Again, such argument is predicated upon the assumption that the Fund is not a State agency, a contention we have rejected. As recognized by appellants and as articulated by the Court of Appeals in discussing section 11 of article VII in *Wein* (*supra,* at pp 304-305): "the danger sought to be met by constitutional restrictions [of article VII] was the over-burdening of future generations by the incurring of long-term debt for capital improvements. The danger was first recognized by the practice of subsidizing canal and railroad construction only to have the transportation companies unable later to pay their debts." Thus, section 11 specifically provides that "no debt shall be hereafter contracted by or in behalf of the state, unless such debt shall be authorized by law, for some single work or purpose, to be distinctly specified therein." The provision for the annual appropriation of $190 million to insure the solvency of SIF following the transfer of a like sum to the State's general fund can hardly be equated with "subsidizing a canal and railroad construction" or "the incurring of long-term debt for capital improvements".

Interestingly, appellants argue that, at the same time that chapters 55 and 404 create an illegal "loan" of the State's credit and a "long-term debt" they also create an "appropriation scheme" violative of section 7 of article VII. That section provides that no money shall be paid from the "state treasury or any of its funds, or of any of the funds under its management, except in pursuance of an appropriation by law; nor unless such payment be made within two years next after the passage of such appropriation act". The appropriations authorized by the challenged legislation do not in any way violate this provision, since if no appropriation is passed in any future year, the amount appropriated for and encumbered during the preceding fiscal year is to be paid forthwith. Thus, any moneys to be paid under any such appropriation must be paid, if at all, within two years next after the passage of such appropriation action.

■ Nor does chapter 55 constitute an unconstitutional legislative incursion upon the discretionary powers of State officials with responsibility for the SIF in violation of the New York State Constitution as argued by appellants. Their reliance on *Patterson v Carey* (41 NY2d 714) and *Sgaglione v Levitt* (37 NY2d 507, *supra*) in support of this contention is misplaced. Indeed, the court in *Patterson* expressly recognized that the Legislature was given the power, under the Constitution to regulate the Comptroller's duties in regard to political subdivisions of the State, but not public benefit corporations. Public benefit corporations are not political subdivisions of the State. (See *Collins v Manhattan & Bronx Surface Tr. Operating Auth.*, 62 NY2d 361, *supra*.) Thus, the Legislature could not constitutionally infringe upon the State Comptroller's exercise of his discretionary power to supervise the financial accounts of the Jones Beach State Parkway Authority, a public authority. So, too, in *Sgaglione,* the issue addressed by the court was the authority of the Legislature to direct and control the Comptroller's discretion in making investments of funds belonging to various State pension and retirement systems in light of the nonimpairment provisions of section 7 of article V of the State Constitution. The statutes under attack here do not deal with the investment

discretion of the SIF. Rather, they merely direct the transfer of funds internally within the State's financial structure.

■■ Plaintiff-appellant's due process and contract impairment arguments based upon the United States Constitution are equally unavailing to establish the unconstitutionality of chapters 55 and 404.

■ The SIF funds are State funds and the plaintiffs have no constitutionally protected property interests therein; certainly not merely by reason of the fact that the moneys in the Fund derive from premiums paid by employer policyholders and the interest earned thereon. Neither do any such property rights accrue from the fact that SIF funds are classified as "fiduciary funds". Section 70 of the State Finance Law, relied upon by plaintiffs does no more, in this regard, than to direct the Comptroller to establish "seven fund types" ranging from "(a) a general fund" to "(g) fiduciary funds" into which all State funds were to be classified. (State Finance Law, § 70, subd 1, as added by L 1981, ch 405.) Moreover, the Comptroller is authorized to reclassify such funds, as is determined by him to be necessary and appropriate and in connection therewith he is only required to give notice of his actions and the reasons therefor to the Legislature and the Governor. (State Finance Law, § 70, subd 2.) Such discretion to classify and reclassify "all funds of the state" which are "not classified by law" into a fund type for "financial reporting purposes" is inconsistent with and totally refutes any claim that classification of these funds as "fiduciary funds" creates a constitutionally protected property right in the SIF funds held by the plaintiffs (State Finance Law, § 70, subd 1, 2).

Nor do any such property rights derive from any "promises" or "guarantees" contained in the policies of insurance or any provision of the Workers' Compensation Law. The contention of plaintiffs that they possess certain contractual rights in respect to the level of insurance premium rates and in respect to the required amount of reserves and the disposition of such reserves which are impaired by chapters 55 and 404, is not supported by either the facts or the law. Clearly, nothing in the policies of insurance themselves can fairly be interpreted as conferring any such

contractual rights. Nor can it reasonably be said that any of the provisions of the Workers' Compensation Law establish any such property interest in the funds of SIF nor impose any contractual obligations upon the State in respect to the funds of SIF, which are substantially impaired by the challenged legislation.

The general rule, as enunciated by the Court of Appeals in this regard is that "a statute will itself be treated as a contract when its language and the circumstances manifest a legislative intent to create private rights of a contractual nature enforceable against the State." (*Cook v City of Binghamton,* 48 NY2d 323, 330.) "[B]efore a law may be deemed to amount to a contract between the State and a third party, the statutory language must be examined and found to be 'plain and susceptible to no other reasonable construction' than that a contract was intended * * * 'It is never to be assumed * * * that the State has * * * fettered its power in the future, except upon clear and irresistible evidence that the engagement was in the nature of a private contract, as distinguished from a mere act of general legislation; and that such, in the particular instance, was the actual and deliberate intention of the State authorities' " (*Pennsylvania R. R. Co. v State of New York,* 11 NY2d 504, 511).

We find nothing in the language of those provisions of the Workers' Compensation Law relied upon by plaintiffs that constitute "clear and irresistible evidence" that the Legislature intended to "fetter * * * its power in the future" in respect to the uses to be made of SIF funds or in respect to the level of reserves to be maintained for policy claims or premium rates for the policies issued by SIF or the payment of dividends. Premiums to be charged are required to be set at the "lowest possible rates" "consistent with reasonable reserves and a surplus" and "dividends may be credited or paid" or may be declared. This language is clearly permissive, not mandatory, and does not evince a legislative intent to " 'create private contractual or vested rights.' " (*Pennsylvania R. R. Co. v State of New York,* 11 NY2d 504, 511, *supra.*)

This language is more reasonably read as declarations of legislative policy rather than "manifest[ing] a legislative

intent to create private rights of a contractual nature enforceable against the State" (*Cook v City of Binghamton,* 48 NY2d 323, 330, *supra.*) That certain benefits may have enured to plaintiffs and other policyholders as a result of the implementation of those policy declarations, does not transform them into contractually created property rights enforceable against the State.

"To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. It is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined * * *

"Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law — rules or understandings that secure certain benefits and that support claims of entitlement to those benefits" (*Board of Regents v Roth,* 408 US 564, 577).

These policy declarations and their implementation " 'may open a chance for benefits to those who comply with its conditions, but it does not address them, and therefor it makes no promise to them. It simply indicates a course of conduct to be pursued, until circumstances or its views of policy change. It would be quite intolerable if parties not expressly addressed were to be allowed to set up a contract on the strength of their interest in and action on the faith of a statute, merely because their interest was obvious and their action likely, on the face of the law.' " (*Pennsylvania R. R. Co. v State of New York,* 11 NY2d 504, 512, *supra.*)

Nor do we find any language in the Workers' Compensation Law comparable to that found in *Patterson v Carey* (41 NY2d 714, *supra*) and *United States Trust Co. v New Jersey* (431 US 1), two cases relied upon heavily by plaintiffs, sufficient to warrant finding that private contract rights are created by the Workers' Compensation Law. In both *Patterson* and *United States Trust Co.,* language is used that unmistakably manifests a legislative intent to create

private rights of a contractual nature, enforceable against the State. In *Patterson,* the State "covenanted" with the holders of Authority bonds and "pledged to vest the authority with the power to raise tolls" and "not to limit or alter the rights vested in the authority to the detriment of authority bondholders." (*Patterson v Carey, supra,* p 721; Public Authorities Law, § 153-b, subd 5; § 158-a.)

In *United States Trust Co. (supra),* both New York and New Jersey "covenanted" that neither State nor the Port Authority of New York and New Jersey would exceed a limit placed on the amount of Port Authority revenues that could be used to pay debts incurred as a result of mass transportation operations. The United States Supreme Court invalidated the repeal of this covenant by both States, holding that the covenant "limited the Port Authority's deficits and thus protected the general reserve fund from depletion * * * Its outright repeal totally eliminated an important security provision and thus impaired the obligation of the State's contract" (431 US, at p 19).

■ Even if it were found that some level of protected contract interests in the funds of the Workers' Compensation Law were possessed by plaintiffs, their claim of unconstitutional impairment of those contractual interests must nevertheless fail.

The threshold inquiry when considering a contract clause impairment claim is " 'whether the state law has, in fact, operated as a *substantial* impairment of a contractual relationship' " (*Energy Reserves Group v Kansas Power & Light Co.,* 459 US 400, 411; emphasis added; *Allied Structural Steel Co. v Spannaus,* 438 US 234, 244). And "[i]n determining the extent of the impairment, we are to consider whether the industry the complaining party has entered has been regulated in the past." (*Energy Reserves Group v Kansas Power & Light Co.,* 459 US, at p 411, citing *Hudson Water Co. v McCarter,* 209 US 349, 357.) As pointed out earlier, not only has the field of workers' compensation been heavily regulated by the New York State Legislature in the past, the specific subject matter, the disposition of the surplus funds of the SIF has been the focus of prior specific legislation. (See, e.g.,

Workers' Compensation Law, §§ 87-a, 87-b, 87-c, 87-d.) Thus, the fact "that the [plaintiffs] are operating in a heavily regulated industry" and that "supervision of the industry [has been] extensive and intrusive" (*Energy Reserves Group v Kansas Power & Light Co.,* 459 US 400, 413, 414, *supra*) is significant and diminishes the force of the plaintiffs' contract impairment claim. Moreover, the policies issued to the plaintiffs specifically provide that they are to be construed by reference to the Workers' Compensation Law as it has been amended previously or shall be amended in the future. The conclusion is inescapable therefore that they knew that their contractual rights were subject to alteration by legislative amendments. That being the case, their "reasonable expectations have not been impaired" by chapters 55 and 404. (*Energy Reserves Group v Kansas Power & Light Co., supra,* p 416.) Moreover, plaintiffs have failed to establish that any impairment that might be found to exist as a result of the enactment of chapters 55 and 404, is in any sense, substantial. While the "severity of the impairment measures the height of the hurdle the state legislation must clear [m]inimal alteration of contractual obligations may end the inquiry at its first stage." (*Allied Structural Steel v Spannaus,* 438 US, at p 245.)

Here, there is no claim or evidence of any retroactive impact of the challenged legislation on any contract rights plaintiffs may possess, and projections of any future premium increase are minimal and assume that there will be no diminution in discounts or dividends to the policyholders. In addition, it does not appear that it is legally required or actuarially necessary for the SIF to raise its premiums either to pay expenses and claims or to replenish reserves for those purposes since the transferred $190 million will be taken from surplus, not from reserves.

In short then, plaintiffs have failed to establish that they possess any constitutionally protected contractual rights in respect to the funds of the SIF or that such rights as may exist are substantially impaired, if at all, by chapters 55 and 404. We have considered plaintiffs' other arguments and find them equally lacking in merit. Thus, we conclude that plaintiffs have failed to demonstrate any constitutional infirmities in the challenged legislation.

We have also considered their citations to authorities from other jurisdictions, purportedly dealing with a like subject. We find that these authorities are distinguishable in significant respects and therefore substantially inapposite. Initially, it is observed that in none of the cited cases from foreign jurisdictions, does it appear that it has been judicially determined that the local counterpart to our State Insurance Fund is a State agency, as is the SIF, exercising a sovereign governmental function constitutionally delegated to it. (*Matter of State Ins. Fund v Boyland,* 282 App Div 516, *supra.*) Nor does it appear to have been judicially determined either that the funds of the compensation agencies were State funds (*Matter of Cahill v Tremaine,* 245 App Div 773, *supra*) or that compensation claims are enforceable against the State itself. (*Cardinal v State of New York,* 279 App Div 326, mod on other grounds 304 NY 400, *supra; cf. Moran v State ex rel. Derryberry,* 534 P2d 1282 [Okla].) Indeed, in Oregon and Florida, the statutes creating workers' compensation plans explicitly declare that those funds are not State moneys (see *Bennett v State Ind. Acc. Comm.,* 203 Ore 275, and *State v Florida State Improvement Comm.,* 158 Fla 743).

We conclude that chapters 55 and 404 of the Laws of 1982 do not affront either the United States Constitution or the Constitution of the State of New York and that Special Term's order declaring them constitutional should be affirmed.

Accordingly, the judgment of the Supreme Court, New York County (William P. McCooe, J.), entered February 24, 1983, which denied plaintiffs' motion for summary judgment and granted defendants, Edward V. Regan, Roderick Chu and the State of New York, motion for summary judgment declaring chapters 55 and 404 of the Laws of New York constitutional should be affirmed without costs.

KASSAL, J. (dissenting). I disagree with the conclusion by the majority and find that chapters 55 and 404 of the Laws of 1982, mandating a transfer of $190 million from the State Insurance Fund to the general fund of the State, are unconstitutional, amounting to a deprivation of property without due process and a taking of private property for

public purpose without just compensation, in violation of the Fifth and Fourteenth Amendments to the United States Constitution and sections 6 and 7 (subd [a]) of the New York Constitution. In addition, in my view, the challenged legislation constitutes an impairment of contractual obligations, invalid under section 10 of article I of the United States Constitution.

The legislation at issue on this appeal directed the transfer of $190 million from the State Insurance Fund (Fund) to the general fund of the State on March 1, 1983 and provided for future annual transfers in the same sum. Through an amendment to the Workers' Compensation Law (adding § 87-f) there was provision for an annual "dry" appropriation of $190 million by the State which was deemed an "admitted asset of the state insurance fund" (Workers' Compensation Law, § 87-f, subd 2). Concededly, the annual appropriation effected a transfer of a substantial sum to the State to be used for general revenue purposes, interest free, and with no real obligation to make repayment. As argued by appellants, the transfer results in the loss to the Fund of substantial moneys for future investment and does thereby have a negative impact upon the ability of the fund to offer discount premium rates which, in the past, had been offered to preferred insureds. Inasmuch as section 89 of the Workers' Compensation Law mandates premiums be fixed "at the lowest possible rates consistent with the maintenance of the solvent fund and of reasonable reserves and surplus", it is patently clear that the annual transfer of $190 million would effect a substantial reduction of income from future investment, which, in turn, would result in a loss of interest to the Fund of about $30,000,000 each year. This will directly increase future premium rates.

The majority places undue emphasis upon the finding that the State Insurance Fund is a State agency and, from that, concludes that all of its assets are State funds which may be used as the Legislature deems appropriate. While I agree that the Fund is a State agency, of significance is the fact that it is funded entirely through private sources, namely, employers, and, in its operation and underlying purpose, has many of the attributes of a private insurance

carrier. Employers who secure compensation coverage through the Fund have a basis for concluding that premium payments will be used in accordance with the statutory directives, including subdivision 1 of section 76 of the Workers' Compensation Law, which provides that the Fund "shall consist of all premiums received and paid into the fund, of property and securities acquired by and through the use of moneys belonging to the fund and of interest earned upon moneys belonging to the fund and deposited or invested" and section 85 thereof, which makes the Commissioner of Taxation and Finance "the custodian of the state insurance fund" and permits the Commissioner to "deposit any portion of the state fund not needed for immediate use," directing that interest earned "shall be collected by him and placed to the credit of the fund." In addition, subdivision 1 of section 76 of the Workers' Compensation Law requires that funds collected "shall be applicable to the payment of losses sustained on account of insurance, to the payment of expenses * * * and to the payment of premiums for reinsurance". The statutory scheme does not authorize the use of such funds for general State purposes nor is there any such legislative intent shown. The legislation at issue here subverts the underlying statutory scheme by diverting funds from their sole intended purpose, i.e., the payment of claims and investment.

Stripping the statutory structure to its bare essentials and taking into account that the Fund operates as a mutual insurance pool, solely funded by premium payments by policyholders and money earned on investments from employer contributions, I fail to perceive the rationale of the majority in concluding that plaintiffs, as insureds, do not have a property interest in the Fund's surplus. The policies create contractual rights which have been infringed upon and the substantial loss of assets each year will have a negative impact upon the ability of the Fund to offer reduced premiums, as in the past. In addition, while the payment of dividends is a discretionary act, it is undisputed that the Fund did maintain a long-standing practice of paying dividends based upon available surplus. The loss of funds and the consequential future loss of

income will have an adverse effect upon the ability to continue that policy.

In short, the legislation amounts to an improper diversion of Fund assets from their intended purpose, contrary to the reasonable expectation of insured employers, who paid premiums to purchase insurance coverage, not to fund the general treasury of the State. Taking cognizance of the fact that the funds are held in a fiduciary capacity and their use and purpose earmarked by express statutory provision, no basis exists to sustain the legislation which, in effect, amounts to a raid upon the Fund. By analogy, the position of the majority would create a precedent which would inevitably lead to sustaining a legislative diversion of other specially earmarked funds, such as public pension and retirement funds. In either situation, there would be a taking of property without due process and without just compensation and, which in my view, is constitutionally infirm.

Nor may the legislation be sustained on the majority's finding that the State guarantees payments to injured claimants. The fact that the Fund is secured by the general assets of the State is not at all dispositive on whether those assets may be used for other State purposes. It is reasonable to conclude that any payment required of the State, as guarantor, will be thrust upon the insured employers by the higher premiums or surcharges. Moreover, the State's status as guarantor does not afford it a license to appropriate the Fund's assets, which are derived solely from private sources and investment. The appropriation, essentially directing the use of assets contrary to the express purpose for which the Fund was created, impinges upon the contractual rights of the policyholders and constitutes a taking of property without due process or just compensation. If additional surplus exists, more than reasonably necessary to satisfy anticipated claims, that surplus ought to be available in the future for investment purposes or distributed to policyholders in the form of additional dividend payments or reduced premiums, within the discretion of the State Insurance Fund, consistent with the statutory scheme of the Workers' Compensation Law.

Accordingly, the judgment, Supreme Court, New York County (William P. McCooe, J.), entered February 24, 1983, denying plaintiffs' motion for summary judgment and granting the cross motion by defendants State Comptroller Regan and State of New York for summary judgment, declaring as constitutional chapters 55 and 404 of the Laws of 1982, should be reversed, on the law, the motion granted, the cross motion denied and the legislation declared to be unconstitutional.

CARRO, J. P., FEIN and MILONAS, JJ., concur with ALEXANDER, J.; KASSAL, J., dissents in an opinion.

Judgment, Supreme Court, New York County, entered on February 24, 1983, affirmed, without costs and without disbursements.