ROBERT KNEALE et al., Individually and as Members of the Board of Education of the Onondaga Central School District, et al., Appellants, v MARIO CUOMO, as Governor of the State of New York, et al., Respondents.

In the Matter of PATRICK M. DOLAN, as Superintendent of Schools of the Onondaga Central School District, et al., Appellants, v RODERICK G. W. CHU, as Commissioner of Taxation and Finance of the State of New York, et al., Respondents.

Third Department, July 23, 1987

## APPEARANCES OF COUNSEL

*Langan, Grossman, Kinney & Dwyer, P. C. (Marc H. Reitz* of counsel), for appellants.

*Robert Abrams, Attorney-General (Peter G. Crary* and *Peter H. Schiff* of counsel), for respondents.

## OPINION OF THE COURT

MAIN, J.

Since 1978, taxpayers have been required to indicate on their income tax returns the school district in which they reside (L 1977, ch 309). This information has been used to calculate a school district's wealth which, in turn, has become the basis of distribution of certain forms of State monetary aid.* The tax returns designating residence in a particular school district are used to determine the total amount of personal income in the district. This amount is divided by the number of pupils in the district, resulting in the district's income per pupil. Aid is then distributed in an inverse proportion to per-pupil income; thus, districts with higher per-pupil income receive less aid than districts with lower per-pupil income *(see,* mem of Senator John B. Daly, 1984 NY Legis Ann, at 288). In 1984, the Legislature became aware that the calculated total amount of a school district's income was frequently inaccurate due to taxpayers' errors in indicating the school district of their residence. This apparently resulted in some school districts being charged with more per-pupil income and, consequently, less State aid. The Legislature thereafter enacted Laws of 1984 (ch 889 [hereinafter chapter 889]) to deal with this problem. The correct interpretation of the Legislature's intent in enacting chapter 889 is at issue in these appeals.

Essentially, chapter 889 directed the State Tax Commission to develop by November 15, 1984 an appeals process to resolve disputes between school districts and the Department of Taxa-

---

* The wealth basis originally was used to distribute low-income supplemental school aid (LISSA). Although the provision of LISSA was repealed in 1985 (L 1985, ch 53, § 46), the wealth basis is currently being used to distribute operating aid *(see,* Education Law § 3602).

tion and Finance with regard to the districts' income; directed the Commissioner of Education, the Commissioner of Taxation and Finance and the Director of the Budget to enter into a cooperative agreement which would determine which "identified school districts" would participate in the validation and correction of income information for use in developing the appeals process; directed the Department of Taxation and Finance to furnish to those "identified school districts" the addresses of all taxpayers who indicated on their returns that they lived within the particular district; and established a temporary task force to study alternatives for the establishment of a State-wide address-match and income-verification system. The cooperative agreement entered into pursuant to chapter 889's mandate defined "identified school districts" as those in which the number of tax returns exceeded 67% of the district's adult population, reasoning that these school districts would have the highest incidences of incorrect reporting. On this basis, 24 school districts were selected to participate in the review and verification and appeals process established by chapter 889. The Onondaga Central School District was not selected to participate. Plaintiffs/petitioners (hereinafter petitioners) commenced this action and proceeding to gain access to the appeals process and to be provided with the addresses of taxpayers who listed the Onondaga Central School District as their school district of residence, contending that chapter 889 requires the implementation of an appeals process for all school districts or, in the alternative, that the limitation of the appeals process to 24 school districts violates the constitutional guarantees of equal protection and due process. Supreme Court rejected both arguments, and petitioners have appealed.

■ Under petitioners' interpretation of chapter 889, the State Tax Commission was required to develop an appeals process for all school districts by November 15, 1984. The only purpose of the "identified school districts" would be to generate data for use in developing the State-wide appeals process. We disagree with this interpretation for several reasons and concur with Supreme Court that the Legislature intended only a trial appeals process, limited in scope. Initially, it should be noted that the sponsor of the bill which became chapter 889 described it as follows: "[The first part of the bill] directs the Department of Tax and Finance, the State Education Department, and any other state, and/or local department or agency deemed necessary to devise a statewide appeals process to help

those school districts which feel as if they are immediately affected by the overreporting of income. *These departments, utilizing certain criteria, would be responsible for determining which school districts would be able to appeal.* This would allow for immediate relief during the next school year starting in November of 1984" (mem of Senator John B. Daly, 1984 NY Legis Ann, at 289; emphasis supplied).

Thus, the purpose of the measure as envisioned by its sponsor was not to have an appeals process open to all school districts by November 1984; instead, the measure was intended to provide a trial-basis method of review to help the school districts most in need of immediate relief. The interpretation of defendants/respondents (hereinafter respondents) is in accordance with this expressed legislative intent.

Several other factors militate against petitioners' interpretation of chapter 889 as being that intended by the Legislature. First, under that interpretation, the Legislature would be giving the State Tax Commission and related authorities less than two months to select the identified school districts, complete and analyze the pilot program utilizing data obtained from the identified school districts, and develop and implement an appeals process for all school districts. As the task force established by chapter 889 subsequently noted, the identified school districts found the process of verifying taxpayer addresses to be "both time consuming and labor intensive", and it would be totally unreasonable to expect a State agency to develop a program for State-wide implementation within such a short time frame. Second, the task force established by chapter 889 was not required to make its recommendations for a State-wide verification system until January 15, 1985, two months after petitioners contend that a State-wide appeals process was to be in place. Third, the Legislature appropriated only $200,000 to create both the verification process and the task force, an amount which would be inadequate if it had intended to include all school districts in the appeals process. Finally, in enacting chapter 889, the Legislature provided only a limited exception to the general rule prohibiting disclosure of information contained in a tax return *(see,* Tax Law § 697 [e]). This exception permitted the Department of Taxation and Finance to provide taxpayer address lists only to the identified school districts. It would make little sense to give all school districts access to an appeals process but deny most of those school districts access to the taxpayer lists needed for verification and appeal. Accordingly, we are of

the opinion that respondents have correctly discerned the legislative intent behind chapter 889 and have acted consistently with that intent.

■ We do not find the selection of certain school districts to participate in the verification and appeals process to be violative of petitioners' right to equal protection. Since there is a strong presumption of the constitutionality of a legislative enactment, petitioners bear a heavy burden to demonstrate that chapter 889 is unconstitutional (see, Trump v Chu, 65 NY2d 20, 25, appeal dismissed 474 US 915). That burden has not been met here. In a case such as this, our review is limited to a consideration of whether there is a rational basis for the selection of certain school districts (see, Matter of Tolub v Evans, 58 NY2d 1, 8, appeal dismissed 460 US 1076), and such a rational basis exists here. As noted above, chapter 889 was intended to provide immediate relief to those school districts most likely to have been affected by inaccurate taxpayer reporting of school districts and to establish a task force to develop long-term solutions to the problem. In determining which school districts were most likely affected, it was entirely reasonable for the Commissioner of Taxation and Finance, the Commissioner of Education and the Director of the Budget to infer that those school districts with higher ratios of tax returns to adult population were most likely affected, thus advancing the legislative goal of providing immediate relief. Since the Legislature is permitted to address one phase of a particular problem which appears to be most acute before addressing other phases of the problem (see, Williamson v Lee Opt. Co., 348 US 483, 489), and since petitioners have failed to demonstrate the lack of a rational basis for the Legislature's inclusion of 24 school districts in the appeal and verification process, we cannot say that chapter 889 is violative of petitioners' right to equal protection.

■ Similarly, we find no violation of petitioners' right to due process of law. In order to invoke due process, a person claiming protection must have a legitimate claim of entitlement to an identified liberty or property interest, not a mere unilateral expectation (see, Matter of Language Dev. Program v Ambach, 96 AD2d 667, 668, appeal dismissed 60 NY2d 859). Property interests "stem from a * * * source such as State law, rules or understandings, that secure certain benefits and that support claims of entitlement to those benefits" (supra, at 668). Here, while petitioners do have a property interest in having their school district receive aid based upon taxpayer-

reported income data *(see,* Education Law § 3602), that interest does not extend to the appeals and verification process; at best, their interest in the appeals and verification process could be classified as a unilateral expectation. Since no property right is implicated, a due process analysis is inappropriate in this case.

■ Finally, petitioners contend that the regulations promulgated pursuant to chapter 889 (20 NYCRR part 2000) are inconsistent with the legislative intent behind chapter 889 and are therefore unlawful. Since petitioners did not raise this issue before Supreme Court, it is not now reviewable by this court *(see, Pietropaoli Trucking v Nationwide Mut. Ins. Co.,* 100 AD2d 680, 681).

WEISS, MIKOLL, YESAWICH, JR., and HARVEY, JJ., concur.

Judgments affirmed, without costs.