ALLIANCE OF AMERICAN INSURERS et al., Appellants, v RODER-
ICK CHU, as Commissioner of Taxation and Finance of the
State of New York, et al., Respondents.

Third Department, March 1, 1990

## APPEARANCES OF COUNSEL

*Kaye, Scholer, Fierman, Hays & Handler (Kenneth R. Feinberg* of counsel), for Alliance of American Insurers and others, appellants.

*LeBoeuf, Lamb, Leiby & MacRae (John M. Aerni* of counsel), for State Farm Mutual Automobile Insurance Company and others, appellants.

*Paul, Weiss, Rifkind, Wharton & Garrison (Robert S. Smith*

of counsel), for American Insurance Association and others, appellants.

*Robert Abrams, Attorney-General (Peter G. Crary* of counsel), for respondents.

### OPINION OF THE COURT

MIKOLL, J.

The primary question involved on this appeal is whether the language in Insurance Law § 7607 (a) which established the Property/Casualty Insurance Security Fund (hereinafter Fund) created a contract which the State unconstitutionally impaired, depriving plaintiffs* of their property without due process of law or just compensation, by the enactment of Laws of 1979 (ch 503) (hereinafter chapter 503) and Laws of 1982 (ch 55) (hereinafter chapter 55). The answer is in the negative for the reasons set forth below.

The Fund had its origins in Laws of 1947 (ch 801) and existed for 22 years under Insurance Law former § 333 as the Motor Vehicle Liability Security Fund. In 1969 the Legislature amended Insurance Law former § 333 to former § 334, changing the name of the Motor Vehicle Liability Security Fund to the New York Property and Liability Insurance Security Fund and expanding its protection against loss due to insurer insolvency to cover not only motor vehicle liability policyholders, but policyholders of other types of insurance as well *(see,* L 1969, ch 189, § 3). The name was again changed in 1984 to the Fund's present name, continuing Insurance Law former §§ 333 and 334 under Insurance Law § 7601 *et seq. (see,* Insurance Law § 102).

Pursuant to Insurance Law § 7603 (b) and (c) (1), insurers in this State are required to make quarterly contributions to the Fund unless the net value of the Fund is at least $150 million, in which case said insurers need not make any contributions the following year. Upon a determination that the net value of the Fund has fallen below $150 million, insurers doing business in this State are required to resume their contributions. Insurance Law § 7607 (a) provides, in relevant part, that the Fund: "shall also be separate and apart from any other fund and from all other state moneys, and the faith and credit of the state of New York is pledged for [its] safekeeping."

---

* Plaintiffs in this case are various insurance carriers doing business in this State, several trade associations and individual policyholders.

At the time the Fund was created, the Insurance Law contained a provision that each insurer would receive a credit or a return of that portion of the interest earned during the preceding year allocable to the contributions the insurer paid to the Fund. That provision was effectively repealed by chapter 503 (currently codified as Insurance Law § 7603 [d]), which required that the excess of the Fund's annual investment income over $15 million be credited to the general fund of the State treasury. However, in the event that the Fund's assets were below $240 million, the investment income would remain in the Fund.

Subsequently, through the enactment of chapter 55 (currently codified as Insurance Law § 7603 [e] [1] [A]), the Insurance Law was amended to direct that $87 million be transferred to the general fund of the State treasury. Corresponding to this transfer provision, the Legislature also amended the Insurance Law (currently codified as Insurance Law § 7603 [e] [1] [B]) to require that the amount transferred from the fund be appropriated each year by the Governor in a budget bill. Such appropriation was to be deemed an asset of the Fund and was payable to the Fund in the event that all of the Fund's other assets were depleted. These "dry appropriations" have been made annually by the Legislature since 1982.

On April 25, 1988, the Superintendent of Insurance declared that the Fund had fallen below $150 million and demanded that insurers doing business in this State make additional contributions to the Fund. Subsequently, plaintiffs commenced three separate actions for declaratory judgment (consolidated into a single action pursuant to CPLR 602 [a]) against defendants, the Commissioner of Taxation and Finance and the Superintendent of Insurance, contesting the constitutionality of chapters 503 and 55. Plaintiffs allege, *inter alia,* that the disputed laws are unconstitutional in that they impaired the State's contract obligations and deprived plaintiffs of their property without due process or just compensation. Both sides moved for summary judgment. Supreme Court, in granting summary judgment in favor of defendants, relied on *Methodist Hosp. v State Ins. Fund* (102 AD2d 367, *affd* 64 NY2d 365, *appeal dismissed* 474 US 801). Plaintiffs appealed directly to the Court of Appeals which, *sua sponte,* transferred the appeal to this court.

■ The judgment of Supreme Court should be affirmed. Defendants' argument that plaintiffs possess no contractual

rights in the Fund is persuasive. All statutes enjoy a strong presumption of constitutionality. The burden of showing the unconstitutionality of a statute rests on the party attacking its validity (Cook v City of Binghamton, 48 NY2d 323, 330). The principal legislative function is " 'not to make contracts, but to make laws which declare the policy of the state and are subject to repeal when a subsequent legislature shall determine to alter that policy' " (supra, at 329, quoting Indiana ex rel. Anderson v Brand, 303 US 95, 100; see, National R. R. Passenger Corp. v Atchison, Topeka & Santa Fe Ry. Co., 470 US 451, 466). Consequently, before a statute will be deemed a contract its language and circumstances must "manifest a legislative intent to create private rights of a contractual nature enforceable against the State" (Cook v City of Binghamton, supra, at 330). The language of the statute must be " 'plain and susceptible of no other reasonable construction' " (Pennsylvania R. R. Co. v State of New York, 11 NY2d 504, 511, quoting Stanislaus County v San Joaquin & King's Riv. Canal & Irrigation Co., 192 US 201, 208).

Clear and precise language, spelling out a covenant or agreement whereby the State becomes obligated to a third party (see, United States Trust Co. v New Jersey, 431 US 1, 9-10; Patterson v Carey, 41 NY2d 714, 717), is absent in Insurance Law § 7607 (a). Thus, Methodist Hosp. v State Ins. Fund (102 AD2d 367, 379-380, supra) is controlling and was properly relied on by Supreme Court. Although there is language here that was not present in Methodist Hosp., providing that the Fund be kept separate and apart from other State moneys and that it has the faith and credit of this State pledged for its safekeeping, this added language is nonetheless declaratory of legislative policy and does not create the necessary contract plaintiffs seek. "That certain benefits may have enured to plaintiffs and other policyholders as a result of the implementation of those policy declarations, does not transform them into contractually created property rights enforceable against the State" (supra, at 380). The required elements of a contractual agreement are not present (see, Camardo v Board of Educ., 79 AD2d 864, 865, appeal dismissed 454 US 805). Defendants' reliance on the language in Insurance Law § 7607 (a) of "separate and apart", "faith and credit" and "pledged for [its] safekeeping" to supply the missing elements merely begs the question.

Assuming that Insurance Law § 7607 (a) does create a contract, plaintiffs have failed to demonstrate beyond a rea-

sonable doubt that the enactment of chapters 503 and 55 substantially impaired that contract *(see, Allied Structural Steel Co. v Spannaus,* 438 US 234, 244-245; *Pharmaceutical Mfrs. Assn. v Whalen,* 54 NY2d 486, 493). Plaintiffs assert that through chapters 503 and 55, income and assets of the Fund were unconstitutionally transferred to the State treasury. However, the purpose of the Fund is to protect the policyholders of this State, not the insurers *(see,* Insurance Law § 7603 [a] [1]). By enacting the Fund, this State has undertaken to reimburse policyholders with Fund assets for losses when their insurers become insolvent, and it has done precisely that. There is no evidence that the State has failed to use the Fund for its intended purpose or that the transfers pursuant to chapters 503 and 55 threaten its solvency. Chapter 55 calls for an annual appropriation equal to the amount of fund moneys transferred *(see,* Insurance Law § 7603 [e] [1] [A]), thereby assuring the Fund's solvency and security. Thus, assuming a contract was created by Insurance Law § 7607 (a), there has been a failure by plaintiffs to establish beyond a reasonable doubt that the State has unconstitutionally impaired that contract by the enactment of chapters 503 and 55.

Plaintiffs also claim that chapters 503 and 55 deprived them of their property without just compensation or due process, in violation of the Federal and State Constitutions *(see,* US Const 5th, 14th Amends; NY Const, art I, § 7). We find that this argument is similarly without merit.

The Fund legislation created no property interest in plaintiffs in either the assets or the income of the Fund. To possess a property right in a particular benefit, one must have more than an abstract need or a unilateral expectation; rather, one must have a legitimate claim of entitlement derived not from the Constitution but from an independent source *(see, Board of Regents v Roth,* 408 US 564, 577; *Kneale v Cuomo,* 130 AD2d 65, 70). Property interests are created and defined by existing rules or understandings which stem from an independent source such as State law *(supra).* At the time the Fund was created in 1969 *(see,* L 1969, ch 189, § 3), it did not give the contributing carriers a property interest in the Fund. To the contrary, their contributions were mandated as a condition for doing business in the State and, if not made in a timely fashion, penalties and interest could be imposed *(see,* Insurance Law § 7603 [b] [1], [2]; § 7614). Plaintiffs' reliance on

*Webb's Fabulous Pharmacies v Beckwith* (449 US 155, 163) to support their contention that the transfer of Fund interest to the State's general fund was an improper taking of their property interest is misplaced. There, the fund involved consisted of private money deposited pursuant to court order to await further order of the court declaring to which creditors it should be paid. An entirely different situation is presented here, where the money was paid to the State for revenue purposes and is therefore State money.

Use of the word "return" in the language of the enactment *(see,* L 1969, ch 189, § 3) does not indicate that the Legislature intended to create a vested property right in the Fund. Rather, the "return of the interest" (L 1969, ch 189, § 3) provision was no more than a declaration of a general legislative policy which was subject to alteration by the Legislature *(see, Cook v City of Binghamton,* 48 NY2d 323, 329-330, *supra).* Additionally, for reasons previously stated, the language of Insurance Law § 7607 (a) is not contractual in nature and cannot therefore serve as a basis for creation of a property interest in plaintiffs.

Plaintiffs' attempt to distinguish the instant case from *Methodist Hosp. v State Ins. Fund* (102 AD2d 367, *supra),* on the ground that the State in that case assumed liability for all claims covered by the State Insurance Fund so that the transfer of assets to the treasury there imposed no new liabilities on State Insurance Fund contributors, fails. No new liabilities are imposed in the case at bar because the annual appropriation provided by Insurance Law § 7603 (e) (1) (A) is to be included as an asset of the Fund *(see,* Insurance Law § 7603 [e] [1] [B]) and therefore compensates for any transfers to the State treasury. Because there has been no showing that the appropriation mechanism is insufficient to compensate for the transfers, allegations of the same are merely speculative. Clearly, chapters 503 and 55 have not allowed the State to raise revenues for its treasury *(see, United States Trust Co. v New Jersey,* 431 US 1, 26, *supra; Patterson v Carey,* 41 NY2d 714, 722-723, *supra)* without incurring a corresponding detriment.

Plaintiffs have failed to demonstrate that they had either a contract or a property right in the Fund which the enactment of chapters 503 or 55 constitutionally impaired. Accordingly,

the declaration of constitutionality by Supreme Court should be affirmed.

MAHONEY, P. J., KANE, YESAWICH, JR., and MERCURE, JJ., concur.

Judgment affirmed, without costs.