*328 OPINION OF THE COURT
Wachtler, J.
The issue on this appeal is whether chapter 965 of the Laws of 1977 which diminished the statutory disability benefits for regularly employed firemen worked an impairment of rights guaranteed by the contract clause of the Federal Constitution, or by section 7 of article V of the State Constitution. The Appellate Division found that it did not.
The plaintiffs are paid firemen of the City of Binghamton and the Villages of Endicott and Johnson City. All were disabled by illness or injury incurred in the line of duty. Prior to the effective date of chapter 965 each plaintiff was receiving his full salary and medical expenses pursuant to former section 207-a of the General Municipal Law, which provided, in part, that a paid fireman, other than those of the City of New York, if injured in the performance of his duties, "shall be paid by the municipality or fire district by which he is employed the full amount of his regular salary or wages until his disability arising therefrom has ceased”.
When it enacted chapter 965 the Legislature had before it information indicating that payments required by section 207-a of the General Municipal Law substantially decreased the financial ability of municipalities to retain the services of a full complement of firefighters, and that the apparent inequity of permitting disabled men to work at jobs in the private sector while receiving full salary might depress the morale of able-bodied firefighters still in service.
As previously noted, chapter 965 worked substantial changes in the operation of section 207-a of the General Municipal Law.* It provided: First, that the payment of full *329 salary and benefits to a disabled fireman shall not continue beyond "such time as he shall have attained the mandatory service retirement age applicable to him or shall have attained the age or performed the period of service specified by applicable law for the termination of his service”; Second, that if a fireman disabled in the performance of his duties is granted an accidental disability retirement pursuant to section 363 of the Retirement and Social Security Law or its equivalent, the municipality shall pay him the difference between the pension allowance and his full salary, but only until the time at which he may be involuntarily retired, and if the disabled fireman refuses to apply for an accidental disability retirement, the municipality may apply for him; Third, that a disabled fireman who is not granted an accidental disability retirement may be required to perform light duty as a fireman, or where consistent with civil service requirements and the fireman consents, may be transferred to another municipal department; and Fourth, that if a disabled fireman takes outside employment, he forfeits any benefits under section 207-a.
Plaintiffs argue that the application of the provisions of chapter 965 to them unconstitutionally impairs the obligation of contracts in violation of section 10 of article I of the United States Constitution.
We note at the outset that there is not present here the circumstance of a contract-in-fact, bargained for by the parties and couched in contractual terms, such as in Patterson v Carey (41 NY2d 714) or in United States Trust Co. v New Jersey (431 US 1) both involving covenants with the holders of bonds issued by public authorities. As in most cases involving the contract clause, the essential question is the existence of a contractual relation. We begin our analysis with the observation that "[t]he principal function of a legislative body is not to make contracts but to make laws which declare the policy of the state and are subject to repeal when a subsequent legislature shall determine to alter that policy. Nevertheless, it is established that a legislative enactment may contain provisions which, when accepted as the basis of action by individuals, become contracts between them and the State or its subdivisions with the protection of Art. I, § 10.” (Indiana ex rel. Anderson v Brand, 303 US 95, 100.)
 In considering whether a State statute impairs the obligation of a contract, "the existence of the contract and the *330 nature and extent of its obligation become federal questions” (Irving Trust Co. v Day, 314 US 556, 561) which are to be determined by "an appraisal of the statutes of the State and the decisions of its courts” (Indiana, supra, at p 100). The burden of showing the unconstitutionality of a statute, or course, rests on the party which attacks its validity (Matter of Van Berkel v Power, 16 NY2d 37, 40) and every legislative enactment carries a strong presumption of constitutionality (Borden's Co. v Baldwin, 293 US 194, 209; Patterson v University of State of N. Y., 14 NY2d 432, 438).
Generally, a statute will itself be treated as a contract when its language and the circumstances manifest a legislative intent to create private rights of a contractual nature enforceable against the State. In Indiana (supra) for example, the statute in question employed the term "contract” a total of 25 times, defining the relation of teachers to the school district and stating the conditions for a teacher’s termination. Moreover, "the tenor of the Act indicates that the word 'contract’ was not used inadvertently or in other than its usual legal meaning” and prior decisions of the State’s highest court interpreting that statute had uniformly held the rights created pursuant to it to be contractual in nature (Indiana, supra, at p 105). Under those circumstances, the United States Supreme Court found that the obligation fell within the ambit of section 10 of article I.
On the other hand, certain types of legislative acts, including those fixing salaries and compensation, or setting the term and tenure of public officers, are not presumed to create a contract: "The presumption is that such a law is not intended to create private contractual or vested rights but merely declares a policy to be pursued until the legislature shall ordain otherwise. * * * If, upon a construction of the statute, it is found that the payments are gratuities, involving no agreement of the parties, the grant of them creates no vested right” (Dodge v Board of Educ., 302 US 74, 79).
In the case at bar the statute in contention contains no words of contract, as in Indiana (supra). There is no hint in its terms that the consent or agreement of any person is required for the statute to have its intended effect. On the contrary, it expresses a public policy as determined by the Legislature. Further, the matters addressed by the statute, i.e., payment of "regular salary or wages” for the period "until his disability * * * has ceased”, both of which are terms and conditions of *331 employment, are indisputably among those classes of legislative acts long presumed to create no private contractual rights.
It is apparent then, that if an enforceable contract right is to be generated by the statute, it must be sought in the holdings of this court. However, an examination of the cases cited by the plaintiffs for the proposition that a consummated unilateral contract arose at the moment of the plaintiffs’ injuries is not persuasive of their contention.
Roddy v Valentine (268 NY 228) and Matter of Day v Mruk (307 NY 349), involved questions of entitlements to pension benefits; Matter of Hammond v City of Fulton (220 NY 337), posed the appealing question of whether the widow of a fireman who died of injuries suffered in the performance of his duties should receive a death benefit. While those cases may be said, generally, to hold that a benefit becomes a vested right upon the performance of the requested service and the occurrence of a specified event, the very particularity of the precipitating event, i.e., death or retirement, contrasted with the ongoing relationship by which salary is earned and accrued, urges that those cases not be considered controlling in the instant circumstances.
As we noted in Conner v City of New York (5 NY 285, 296): "The prospective salary or other emoluments of a public office * * * are like daily wages unearned, and which may never be earned; the incumbent may die or resign, and his place be filled, and the wages earned by another. The right to the compensation grows out of the rendition of the services, and not out of any contract between the government and the officer, that the services shall be rendered by him.”
We find that the operation of former section 207-a of the General Municipal Law did not give rise to a contractual relation, either in fact or by implication; it necessarily follows, therefore, that there can have been no impermissible impairment of the obligation of contract.
Plaintiffs’ second argument is that the operation of chapter 965 impairs their rights as members of a public pension system, in violation of section 7 of article V of the State Constitution which construes membership in any pension or retirement system as a contractual relationship which "shall not be diminished or impaired”. They contend, in short, that the right to elect a particular retirement plan, including an early retirement plan, and, under the proper circumstances, to *332 withdraw from a plan chosen, are valuable rights and benefits of membership in a public retirement system, and that chapter 965, by permitting them to be involuntarily retired in advance of the general mandatory retirement age, impermissibly impairs and diminishes the benefits of their membership.
It is long settled, however, that the fact that there can be no constitutional impairment of pension system benefits does not create a constitutional right to stay in public employment. To do this would place the regulation of public employment beyond the control of any authority, which certainly was not intended by our Constitution (Gorman v City of New York, 280 App Div 39, 45, affd 304 NY 865).
As we have already indicated, however, section 207-a of the General Municipal Law was enacted as a matter of public policy, in the exercise of the police power, to protect firemen. The benefits it afforded were part of the terms and conditions of employment which the Legislature properly could change at will without interdiction by section 7 of article V. It would be disingenuous to maintain, and we do not, that a change in the terms of employment such as was effected by chapter 965, would have no influence whatever on the retirement benefits of those to whom it applied. Any such influence, however, is minor and entirely incidental, and may not be said to lie within the area of actions prohibited by the Constitution.
One additional point, which is primarily a question of statutory construction, remains for our consideration.
The statute, as amended by chapter 965 now provides without further definition, that payment of salary and benefits shall not continue after "such time as he shall have attained the mandatory service retirement age applicable to him or shall have attained the age or performed the period of service specified by applicable law for the termination of his service”.
In apparent reliance upon that language, the City of Binghamton has terminated the payment of salary benefits under section 207-a to all the plaintiffs who have reached an age or performed a period of service which would otherwise qualify them for a voluntary retirement under one of the optional plans available under the Retirement and Social Security Law.
Apart from an accidental disability retirement pursuant to section 363 of the Retirement and Social Security Law, which the municipality may compel if the disabled fireman is *333 deemed to qualify for such an allowance, the only age specified for involuntary retirement occurs at age 70 (Retirement and Social Security Law, §§ 70, 370), or, in the case of those who have voluntarily elected certain additional pension benefits pursuant to section 384 of the Retirement and Social Security Law, at age 62. In each case, however, the additional benefit is an option which the member is free to accept or reject. If the additional benefit is not chosen, the member is not subject to separation from service at age 62, hence is not subject to mandatory retirement until age 70.
The order of the Appellate Division, therefore, should be modified to the extent of declaring that disabled firemen receiving benefits under section 207-a of the General Municipal Law may not be separated from service until they reach the mandatory retirement age of 70, unless they have voluntarily elected additional benefits under section 384 of the Retirement and Social Security Law, and otherwise affirmed.
Chief Judge Cooke and Judges Jasen, Gabrielli, Jones, Fuchsberg and Meyer concur.
Order modified, with costs to defendants, in accordance with the opinion herein and, as so modified, affirmed.

 The Governor’s memorandum approving chapter 965 states that it amends section 207-a to do the following:
"permit the retirement of a fireman eligible for disability retirement benefits, with the municipality paying only the difference between the disability benefit and his normal salary;
"permit the municipality to require a fireman who is not eligible for accidental disability retirement to perform appropriate duties consistent with his status as a fireman;
"provide for the retirement of a fireman not granted accidental disability retirement upon his reaching normal retirement age, with the municipality being liable only for his medical expenses;
"allow the municipality to transfer a disabled fireman to a position in the same or another agency or department with the fireman’s consent.
"prohibit a disabled fireman collecting a salary from a municipality from engaging in outside employment.” (NY Legis Ann, 1977, p 336.)