JAMES HARZINSKI et al., Respondents-Appellants, v VILLAGE OF ENDICOTT, Appellant-Respondent. (Action No. 1.)

SAMUEL P. RUSSO et al., Appellants, v CITY OF BINGHAMTON et al., Respondents. (Action No. 2.)

Third Department, December 3, 1981

**APPEARANCES OF COUNSEL**

*Ball & McDonough (Kevin F. McDonough* of counsel), for respondents-appellants in Action No. 1 and appellants in Action No. 2.

*Rodney A. Richards,* for appellant-respondent in Action No. 1.

*Kenneth Auerbach, Corporation Counsel,* for City of Binghamton, respondent in Action No. 2.

SWEENEY, J.

These appeals involve two separate actions for declaratory judgments regarding the amount of benefits that must be paid pursuant to subdivision 2 of section 207-a of the General Municipal Law by a municipality to disabled firemen who are receiving accidental disability retirement allowances. A resolution of the issues necessitates an analysis and interpretation of subdivision 2 of section 207-a of the General Municipal Law.

Prior to the amendment of section 207-a of the General Municipal Law (L 1977, ch 965, § 1), the statute was interpreted as requiring the municipality to pay disabled firemen their full salaries, including any subsequent raises given to those in the same grade or title held by the injured firemen at the time of their injuries, until their disabilities had ceased (*Pease v Colucci,* 59 AD2d 233). Also under this statute prior to its amendment, a disabled fireman could not be forced to apply for an accidental disability retirement allowance (*Cook v City of Binghamton,* 24 AD2d 122). Under the 1977 amendment, the first paragraph of section 207-a was, with minor alterations, designated subdivision 1 (L 1977, ch 965, § 1). Five new subdivisions were also added to section 207-a, including subdivision 2 which provides in substance that a municipality may apply for an accidental disability retirement allowance for a permanently disabled fireman and, if such an allowance is granted, payment of the full amount of regular salary or wages as provided by subdivision 1 shall be discontinued (General Municipal Law, § 207-a, subd 2). In such a case, however, subdivision 2 requires that the fireman, until he attains the mandatory service retirement age applicable to him or attains the age or has performed the period of service specified by applicable law for the termination of his service, be paid by the municipality "the difference between the amounts received under such allowance or pension and the amount of his regular salary or wages" (General Municipal Law, § 207-a, subd 2). When entitled to an accidental disability retirement allowance pursuant to section 363 of the Retirement and Social Security Law, an individual has a choice of different options including the

option referred to as the "zero option" which gives maximum income during the individual's life but carries no death benefits.

In Action No. 1, we are concerned with certain plaintiffs entitled to benefits pursuant to subdivision 2 of section 207-a of the General Municipal Law due to the fact that applications for accidental disability retirement allowances under section 363 of the Retirement and Social Security Law were made on their behalf by their employer, the defendant in this action. Defendant computed their benefits based on their final average salaries and refused to include increases granted to active firemen. These computations were also based on the amount plaintiffs would have received as a retirement allowance under the "zero option" rather than the amounts actually received under the options selected. Special Term granted in part plaintiffs' motion for partial summary judgment declaring that certain plaintiffs were entitled to receive the difference between their final salaries, including salary increases, and the amounts which would be paid under the "zero option". Both parties have appealed from that order.

In Action No. 2, plaintiffs are entitled to benefits pursuant to subdivision 2 of section 207-a of the General Municipal Law as their employer also made applications on their behalf for accidental disability retirement allowances. Their benefits were calculated as one quarter of their final average salaries and salary increases were not included. Special Term granted in part plaintiffs' motion for summary judgment, declaring that defendant City of Binghamton must pay plaintiffs the difference between the "zero option" and their salaries at the time of retirement. Salary increases given to active firemen were not included. Only the plaintiffs appealed from this order.

Initially, we will consider the issue on which the Special Terms differed, that is, whether plaintiffs are entitled to the salary increases given to active firemen. We would note that section 207-a of the General Municipal Law as originally enacted placed a heavy burden on municipalities, making it financially difficult to hire new firemen and decreasing the morale among able-bodied firemen (see, e.g., Governor's Memorandum, NY Legis Ann, 1977, p 336;

Report of Permanent Commission on Public Employee Pension and Retirement Systems, 1977 [recommendation for reform of section 207-a of the General Municipal Law]). The purpose of the amendment to section 207-a was to alleviate this burden on municipalities (see Governor's Memorandum, NY Legis Ann, 1977, p 336).

In our view, there are now two distinct categories of benefits under subdivisions 1 and 2 of section 207-a of the General Municipal Law. The benefits under subdivision 1 are payable to disabled firemen who presumably will return to their employment and these benefits should be paid as were the benefits under the original section 207-a. This court has in fact recently held in a case involving firemen receiving benefits under subdivision 1 of section 207-a, as amended, that the benefits paid were to include salary increases given to active firemen (*Matter of Drahos v Village of Johnson City,* 80 AD2d 106). In another case involving firemen receiving benefits under subdivision 1 of section 207-a, we again stated that disabled firemen are entitled to increments in salary paid to active firemen (*Matter of Chalachan v City of Binghamton,* 81 AD2d 973). The benefits payable under subdivision 2 of section 207-a differ. Those who receive benefits under subdivision 2 are retired and, therefore, they are no longer employees of the municipality. Considering this fact, and in light of the intent of the amendment to section 207-a to lessen the financial burden on municipalities, we conclude that disabled firemen who are retired and entitled to benefits under subdivision 2 of section 207-a of the General Municipal Law are not entitled to the salary increases given to active firemen (see *Matter of Mashnouk v Miles,* 80 AD2d 855). This conclusion is bolstered by the fact that two bills before the Legislature (Bill No. 4764 in Assembly, dated Feb. 24, 1977; Bill No. 10709 in Assembly, dated March 25, 1980), which would have granted salary increases to firemen receiving benefits under subdivision 2 of section 207-a, were not passed (see McKinney's Cons Laws of NY, Book 1, Statutes, § 125, subd a).

We now pass to the issue of how to determine under subdivision 2 of section 207-a of the General Municipal Law the difference between the amounts received under

the accidental disability retirement allowance and the amount of the fireman's regular salary or wages. Initially, we reject the argument that the salary used in the computation must be based on the fireman's average salary rather than the final salary. Although section 363 of the Retirement and Social Security Law speaks in terms of a final average salary being used to compute the retirement allowance, subdivision 2 of section 207-a does not use the term final average salary and we conclude that the salary to be used is the fireman's final salary.

As to the contention that the municipalities are required to pay the difference between regular salary and amounts actually received as retirement allowances rather than the difference between regular salary and the amount that would be received under the "zero option", we disagree. A retiring disabled fireman may choose among several options for his retirement allowance with the "zero option" paying the maximum amount during a lifetime but providing no death benefits. Other options pay him less during his lifetime but provide some death benefits, the amount of which depends on the specific option selected. Consequently, if the benefits payable are based on the option actually selected, the municipality would be inequitably deprived of considering the value of other benefits received. Thus, we believe both Special Terms properly determined that the computations should be made utilizing the "zero option".

Finally, defendant City of Binghamton has asked this court in Action No. 2 to set the date of retirement for each plaintiff at the date after each accidental disability retirement application was granted and to require reimbursement from the State Retirement System to the City of Binghamton. Special Term did not grant this relief and the City of Binghamton did not appeal. Accordingly, this court will not consider this request for relief on appeal (see *Matter of Burk,* 298 NY 450, 455; *Ralston Purina Co. v Siegel's Poultry,* 24 AD2d 926).

The order in Action No. 1 should be modified, on the law, by reversing so much thereof as declared that the plaintiffs in question were entitled to receive any increases in monetary compensation granted active firemen in addition to

their regular salary and wages and, as so modified, affirmed, without costs.

The order in Action No. 2 should be affirmed, without costs.

MAHONEY, P.J., KANE, CASEY and WEISS, JJ., concur.

Order in Action No. 1 modified, on the law, by reversing so much thereof as declared that the plaintiffs in question were entitled to receive any increases in monetary compensation granted active firemen in addition to their regular salary and wages and, as so modified, affirmed, without costs.

Order in Action No. 2 affirmed, without costs.