■ In the Matter of JOHN KUZMA, Respondent, v CITY OF BINGHAMTON et al., Appellants. — Appeal from a judgment of the Supreme Court at Special Term (Smyk, J.), entered February 1, 1983 in Broome County, which granted in part petitioner's application, in a proceeding pursuant to CPLR article 78, to have respondents resume making certain retirement payments to petitioner and to reimburse him for improperly withheld payments. Petitioner, a City of Binghamton fireman since 1947, had sustained disabling injuries as a result of which respondent city, on April 21, 1978, filed an involuntary accidental disability retirement application on his behalf with the State Policemen's and Firemen's Retirement System. That application was approved by the State Comptroller on May 23, 1979. Shortly thereafter the city informed petitioner that he would be removed from the active payroll effective June 22, 1979. A stay issued in *Russo v City of Binghamton* (83 AD2d 305, mod 57 NY2d 614), a proceeding in which petitioner and several other firemen were copetitioners, restrained the city from removing petitioner from the payroll until September 1, 1979. Petitioner, on June 14, 1979, notified the retirement system that he was withdrawing his earlier voluntary election to participate in an age 62 retirement plan and was continuing instead in the age 70 retirement plan (see Retirement and Social Security Law, § 384). From September 1, 1979 until April 1, 1982, petitioner received his accidental disability payments and a supplemental payment from the city made pursuant to subdivision 2 of section 207-a of the General Municipal Law, which represented the difference between his accidental disability payments and what would have been his regular salary as a fireman; the supplemental compensation was to be paid until attainment of "the mandatory service retirement age applicable to him" (General Municipal Law, § 207-a, subd 2). The city discontinued these supplemental payments because it maintained that, on March 31, 1982, petitioner had indeed reached his mandatory retirement age of 62; it refused to recognize petitioner's withdrawal of his election to participate in the age 62 retirement plan. That refusal was based on the fact the withdrawal of his retirement election occurred after he had been advised by the Comptroller of the acceptance of the accidental disability application filed by the city. This CPLR article 78 proceeding ensued. Special Term found petitioner's change of retirement plans to be valid and directed the city to recommence payment of the

supplemental benefits and to reimburse petitioner for the amount of those benefits withheld since April 1, 1982; a request by petitioner for attorney's fees was denied and the latter ruling has not been appealed. We affirm. The critical issue is the date petitioner's accidental disability retirement became effective. Respondents argue that it should be May 24, 1979, the day after petitioner received notice of the Comptroller's acceptance of the accidental disability application, thus nullifying the subsequent retirement plan change. However, a regulation promulgated by the Comptroller establishes the effective date as "the date of filing of such disability retirement application or on the day after the last date on which the member receives salary, *whichever is later*" (emphasis added) (2 NYCRR 309.5). Applying this regulation to petitioner's case, the Comptroller concluded that the effective date of retirement was September 1, 1979, the date petitioner was taken off the payroll following the lifting of the stay. Adoption of this date would, of course, mean that the change in retirement plans and mandatory retirement age was valid. Given the breadth of the Comptroller's interpretative authority in this area, we concur in his opinion (Retirement and Social Security Law, § 363, subd d; see *Matter of Hanover v New York State Policemen's & Firemen's Retirement System,* 45 NY2d 907, 908). Thus, until September 1, 1979, petitioner was free to exercise his right to withdraw from the age 62 retirement plan (Retirement and Social Security Law, § 384, subd c; see *Cook v City of Binghamton,* 48 NY2d 323, 333). This withdrawal left him subject to superannuation retirement at age 70 (*Matter of Klonowski v Department of Fire of City of Auburn,* 58 NY2d 398, 405, n 4). We find unpersuasive respondents' argument respecting the alleged unfairness of petitioner's taking advantage of the stay to secure eight more years of supplemental payments. The stay was an integral part of *Russo v City of Binghamton* (*supra*), a case in which petitioner and other plaintiffs were ultimately successful in obtaining increased supplemental payments under subdivision 2 of section 207-a of the General Municipal Law. Furthermore, even if the stay had not been in effect, petitioner was not scheduled to be separated from the payroll until June 22, 1979, some eight days after he had furnished notice of his intention to alter his retirement plans. Consequently, under any set of circumstances, petitioner's mandatory retirement age on the effective date of his accidental disability retirement was 70 and the city is obligated to provide him with supplemental benefits until he reaches that age. Judgment affirmed, with costs. Sweeney, J. P., Casey, Yesawich, Jr., Weiss and Levine, JJ., concur.