*243 OPINION OF THE COURT
Harold J. Hughes, J.
This proceeding follows Matter of Uniform Firefighters of Cohoes, Local 2562 v City of Cohoes (175 Misc 2d 726), in which the respondent Uniform Firefighters of Cohoes (union) and individual “nonworking” members unsuccessfully sought to thwart petitioner City of Cohoes’ (Cohoes) efforts to obtain work from its “nonworking” firefighters pursuant to General Municipal Law § 207-a (3) by urging that those employees are entitled to due process hearings prior to being ordered to perform “light duty” and should not have to return to work while their contract grievances are pending.
Cohoes now applies to stay arbitration of the contract grievances. Cohoes has not participated in this arbitration and its application is a timely response to respondent’s notice of intention to arbitrate (Matter of Blamowski [Munson Transp.], 91 NY2d 190, 195).
Although the question of whether General Municipal Law § 207-a (3) “light duty” assignments are arbitrable has not been previously considered by the courts, the statute is unambiguous and several lines of cases provide ample guidance. The courts are vested with authority to determine whether the parties to a contract have agreed to submit their contractual disputes to arbitration, and, if so, whether the disputes generally come within the scope of the arbitration agreement (Sisters of St. John the Baptist v Geraghty Constructor, 67 NY2d 997, 998; Matter of County of Dutchess [Bridgman], 144 AD2d 463, lv denied 75 NY2d 701). This court initially rejects respondent’s effort to bootstrap itself before an arbitrator with its assertion that issues of arbitrability must be submitted to an arbitrator and its unsupported claims that the contract was violated. Even a clear agreement that the arbitrability of all issues will be submitted to an arbitrator is always governed by strong public policy (Matter of County of Schenectady [Kelleher], 134 AD2d 127, 129).
The nearly universal encouragement for parties to engage in voluntary arbitration as an alternative means of dispute resolution does not negate the fundamental difference of arbitration and litigation. Arbitrators are permitted to determine what evidence to consider, and apply their own law and equity. Their decisions, unlike those of Judges, may not be vacated because of clear legal or factual errors (CPLR 7511 [b] [1]; Matter of Associated Teachers v Board of Educ., 33 NY2d 229, 235).
*244 Given the inherent potential for an arbitrator to defeat public policy in an unreviewable determination, the two-step process for determining whether a valid, enforceable agreement to arbitrate a particular issue exists between a municipality and its employees must begin by determining whether the Taylor Law (Civil Service Law § 200 et seq.) permits submission of the particular subject matter of the dispute to arbitration (Matter of Committee of Interns & Residents [Dinkins], 86 NY2d 478, 484). If some “statute, decisional law or public policy’ prohibits arbitration of the subject matter of the dispute, then the claim is not arbitrable regardless of whether the contract provides for arbitration of the issue (Matter of Committee of Interns & Residents [Dinkins], supra, at 484).
General Municipal Law § 207-a (3) contains no express prohibition of contractual arbitration, but is distinguishable from other statutes for which there is no strong legislative design or public policy against arbitration. General Municipal Law § 207-a is properly understood as being independent of contractual provisions governing regular duty, by giving full pay to fully or partially disabled firefighters performing no work or only “light duty’. Furthermore, “light duty” is based on the “nonworking” employee’s medical condition and physical capacity rather than contractual requirements.
The parties’ conflict results from the statute’s creation of a “full pay” status quo for all “nonworking” employees. General Municipal Law § 207-a provides that employers may order their disabled firefighters to return to “regular duty” or “light duty’ assignments as their physical condition permits, but aside from the threat of no payment if an employee actually “refuse [s] to perform” and the provision for “fringe benefits” connected to “regular duties”, General Municipal Law § 207-a (3) provides absolutely no financial incentive for “nonworking” employees to cooperate with efforts to return them to any productive role. Indeed, no incentive could be given without paying the employee performing “light duty” more than the able-bodied are paid for full duty. As noted in the prior proceeding, the respondent’s “nonworking” employees are not better off financially as a result of returning to work. There being no incentive for “nonworking” employees to return to “light duty” or full duty, the union and its members are powerfully motivated to paralyze the process by which they are forced to return or find ways to create extrastatutory incentives for themselves (Matter of Town of Carmel v Public Empl. Relations Bd., 246 AD2d 791).
*245 Despite respondent’s frustratingly vague contract grievances, the court still may evaluate what the union has presented. Respondent’s claims support precluding arbitration by revealing its “nonworking” members’ entrenched antipathy to returning to work. For example, the union candidly characterizes “light duty” assignments in which “nonworking” members would perform work presently performed by working members as “harassment” of the “nonworking” employees. Respondent’s grievance claims are also so comprehensive that they would effectively confine “light duty” to the point where it serves no useful purpose and the employers’ task of selecting “limited duty” would be impossible. The union ignores that the collective bargaining agreement is an organic whole when it proposes that, in the absence of any contractual provision specifically referring to General Municipal Law § 207-a (3), “nonworking” members returning to “light duty” are entitled to pick and choose between all agreement provisions or portions thereof. Able-bodied firefighters do not pick and choose which parts of the collective bargaining agreement they will abide by and which will be applied to themselves. “Nonworking” employees should have no greater rights than working employees.
Respondent’s reliance on the contract also supersedes accommodating the alleged disabilities of the “nonworking” employees or the practical needs of the employer. Thus, if able-bodied firefighters are only obligated to be on duty for one 24-hour day, followed by two days off, then the union claims that “light duty” may involve work on no more than two days per week. Here, too, the union ignores that the agreement is intended to be taken as a whole and predicates 24-hour days on the physical abilities of the able-bodied firefighters and the exigencies of firefighting. The “light duty” firefighters are not properly treated in the same manner because they will “fight” no fires and such prolonged activity could be ill-advised for individuals as medically imperiled as the “nonworking” employees claim to be.
The statute is far less restrictive than the union’s analysis. General Municipal Law § 207-a (3) only requires that “light duty” be “consistent with [their] status as [firefighters]”, not that it be identical to, as desirable or more desirable than the duties assignéd to able-bodied firefighters. General Municipal Law § 207-a has always granted municipal employers discretion to create “light duty” assignments that differ from the firefighters’ normal job assignments. Fire departments through their employees perform a variety of tasks as “diverse as fire *246 fighting, making safety inspections, working in the alarm office or any one of a number of other necessary responsibilities” (Ring v Langdon, 69 AD2d 998, 999). If a “light duty’ assignment furthers the fire department’s own operation or protects the public from fire hazards, it is consistent with the employee’s status as a firefighter and consequently meets the statutory standard (Ring v Langdon, supra). Thus, respondent’s conclusion that “light duty’ assignments must conform to the terms of full duty is inconsistent with the statute.
The total absence of any specific provision in the parties’ collective bargaining agreement bringing “light duty’ within the confines of the agreement is clearly not a mere happenstance. Unless “nonworking” employees appreciate the reward of simply being productive members of the fire department, their efforts at avoiding and delaying their return to work, reducing the usefulness of the work performed, and the inherent conflicts between them and the able-bodied firefighters (Cook v City of Binghamton, 48 NY2d 323, 328), will continue and they will not agree to any terms permitting “light duty’. Thus, the absence of contractual terms silently confirms the practical considerations behind a public policy prohibition of arbitration.
The union’s conclusion that the collective bargaining agreement governs “light duty’ assignments also runs counter to the case law. Disabled firefighters receiving General Municipal Law § 207-a benefits are not automatically entitled to collective bargaining agreement benefits such as vacation time or payment for unused vacation time. Without explicit contract language to the contrary, employees receiving the benefits of General Municipal Law § 207-a are entitled only to that which is statutorily required: regular salary or wages (Matter of Chalachan v City of Binghamton, 55 NY2d 989, 990) or “fringe benefits” connected to “regular duties” actually performed (General Municipal Law § 207-a [3]).
In urging that “light duty” is so restricted, the union actually harkens back to the statute’s original form and earlier failure. The original statutory formulation, after generous interpretation favoring “nonworking” employees (Ring v Langdon, supra), so threatened municipalities’ ability to field able-bodied firefighters and the obvious “inequity of permitting disabled men to work at jobs in the private sector while receiving full salary” so concerned the public and affected able-bodied firefighters’ morale as to require amendment in 1977 (Cook v City of Binghamton, 48 NY2d 323, 328). The statute was amended to promote disabled employees’ return to “light-duty work” and *247 eliminate employers’ obligation to continue paying those who refuse to perform fire department tasks which they are physically capable of performing. The statute provides for “light duty” without binding that term to collective bargaining agreements, arbitration or mandatory bargaining. Ironically, “nonworking” employees’ failure to cooperate with the assignment of “light duty” is, in the long run, counterproductive. If they are successful in making “light duty” unworkable or more expensive (Matter of Town of Carmel v Public Empl. Relations Bd., 246 AD2d 791, supra) than simply leaving them free to recreate while collecting full pay, public pressure to eliminate General Municipal Law § 207-a will again mount (Cook v City of Binghamton, 48 NY2d 323, 328).
It is well established that municipal employers are authorized to determine whether an employee is entitled to benefits or requires corrective surgery under General Municipal Law § 207-c (Matter of Schenectady Police Benevolent Assn. v New York State Pub. Empl. Relations Bd., 85 NY2d 480, 485-486). For the same reasons it is vital when the employer orders a “nonworking” employee to return to “light duty’, that it have maximum flexibility in choosing tasks both consistent with the employee’s physical capabilities and the employer’s needs. Each limitation on the employer’s authority to craft useful “light duty’ assignments for its disabled employees runs counter to the public policies reflected in General Municipal Law § 207-a and enunciated in Cook v City of Binghamton (48 NY2d 323, supra). Given the original statute’s unsuccessful history and the important public policy behind General Municipal Law § 207-a (3), the statute is, and should remain, self-contained.
Even if General Municipal Law § 207-a were ambiguous, its arbitrability can be evaluated by reference to the parallel provisions of General Municipal Law § 207-c. It is now well established that public policy places a municipality’s application and interpretation of General Municipal Law § 207-c outside the general provisions of collective bargaining agreements even where the collective bargaining agreement specifically recognizes the employees’ rights to said statutory benefits (Matter of Barnes [Council 82, AFSCME], 235 AD2d 695; Matter of County of Dutchess [Bridgman], 144 AD2d 463, lv denied 75 NY2d 701, supra). Unless a collective bargaining agreement specifically recognizes the “nonworking” employees’ right to obtain the benefit of the general terms of the collective bargaining agreement, or there is a specific agreement between the *248 parties evidencing an intent to arbitrate such claims, arbitration is properly stayed (Matter of Barnes [Council 82, AFSCME], supra). The same principles are consistent with the public policies reflected in General Municipal Law § 207-a (3) and the decisional law therefore serves to support staying arbitration under that section as well.
Determining whether an issue is arbitrable also roughly parallels the consideration given to whether it would be subject to mandatory bargaining. The Taylor Law generally requires bargaining over terms and conditions of employment, unless such requirement is negated by plain and clear legislative intent or statutory provisions demonstrating the Legislature’s inescapable design that it not be a matter for bargaining (Matter of Schenectady Police Benevolent Assn. v New York State Pub. Empl. Relations Bd., 85 NY2d 480, 485-486, supra). Just as General Municipal Law § 207-c tacitly places “light duty” police assignments and required corrective surgery outside the ambit of mandatory bargaining (Matter of Schenectady Police Benevolent Assn. v New York State Pub. Empl. Relations Bd., supra), the court finds that General Municipal Law § 207-a must also be read as tacitly proscribing mandatory bargaining or arbitration of issues arising from determinations of what “light duty’ employees are capable of performing.
After reviewing the statute’s text and history and similar statutes, the court finds that the union’s strong incentive to stall and attempt to control “light duty” through arbitration does not rise to the level of an enforceable right. Indeed, once the union or its members gain the right to determine what “light duty” a “nonworking” employee is capable of or may perform under the contract, General Municipal Law § 207-a (3) will be rendered a nullity. Thus, there is a strong public policy against arbitrating respondent’s General Municipal Law § 207-a (3) claims. Respondent’s thinly veiled efforts to obstruct the return of its “nonworking” members under the guise of arbitrating them as “contract grievances” is not only obvious, it violates the public policy behind General Municipal Law § 207-a (3).
The second part of analyzing arbitrability involves consideration of the parties’ collective bargaining agreement. In light of the strong public policy and decisional law against arbitration of these matters, the question of whether the terms of the particular arbitration clause include this subject area is irrelevant (Matter of Committee of Interns & Residents [Dinkins], 86 NY2d, supra, at 484). Nevertheless, the subject agreement’s arbitration clause makes no effort to render General Municipal Law § 207-a (3) “light duty” issues arbitrable.
*249 Finally, it is noteworthy that although General Municipal Law § 207-a (3) runs counter to the normal policy favoring employer-employee negotiation and arbitration, it does not abandon the “nonworking” employee to the whims of employers. By implicitly recognizing the employers’ practical need for flexibility in requiring workers with no incentive to do so to return to work, the statute imposes the burden of treating “nonworking” firefighters appropriately. Those employers who abuse their discretion remain subject to prompt judicial review of their administrative action (Matter of Hamilton v City of Schenectady, 210 AD2d 843).
In conclusion, General Municipal Law § 207-a (3)’s provision for returning employees to “light duty” work stands outside the terms of the parties’ collective bargaining agreement and is not arbitrable as a matter of strong public policy and decisional law. Accordingly, petitioner’s application to stay arbitration must be granted.