[684 NYS2d 83]

In the Matter of JOHN A. MAINELLO, JR., Appellant, v H. CARL McCALL, as Comptroller of the State of New York, et al., Respondents.

Third Department, January 21, 1999

APPEARANCES OF COUNSEL

*Tobin & Dempf,* Albany (*Mark A. Mainello* of counsel), for appellant.

*Eliot Spitzer, Attorney-General,* Albany (*Lew A. Millenbach* of counsel), for respondents.

**OPINION OF THE COURT**

MERCURE, J.

The premise underlying this proceeding is that Retirement and Social Security Law § 381-b (e), as amended by Laws of 1988 (ch 759), which required that petitioner be retired from his position as Assistant Deputy Superintendent with the Division of State Police at the conclusion of the year in which he attained age 57, violates the Nonimpairment Clause of the NY Constitution (NY Const, art V, § 7)* as applied to him. We disagree and accordingly affirm Supreme Court's judgment dismissing the petition.

Petitioner began his 33-year service with the Division of State Police in 1963. In 1969, he became a member of a 20-year special pension and retirement program for State Police personnel, created by Laws of 1969 (ch 336) and codified as Retirement and Social Security Law § 381-b (e). That retirement program subjected petitioner, who then held the position of Trooper, to a mandatory retirement age of 55 (*see,* Retirement and Social Security Law § 381-b [former (e)]). An almost immediate amendment to Retirement and Social Security Law § 381-b (former [e]) provided for a mandatory retirement age of 60 for those holding certain high-ranking positions within the Division of State Police, including the position of Assistant Deputy Superintendent (L 1969, ch 470). Finally, Retirement and Social Security Law § 381-b (e) was again amended in 1988 so as to eliminate the distinction between classes of members and to fix a uniform mandatory retirement age of 57 for all members (*see,* L 1988, ch 759). Petitioner turned 57 in 1996 and was mandatorily retired effective December 30, 1996 in accordance with Retirement and Social Security Law § 381-b (e).

---

* NY Constitution, art V, § 7 provides, in relevant part, that: "membership in any pension or retirement system of the state * * * shall be a contractual relationship, the benefits of which shall not be diminished or impaired."

The record establishes that petitioner attained the position of Assistant Deputy Superintendent in 1994, the year in which he turned 55. There is no question that, had there been no amendment to Retirement and Social Security Law § 381-b (e) subsequent to 1969, petitioner's attainment of one of the positions specified in Retirement and Social Security Law § 381-b (former [e]) prior to the end of 1994 (when he would have been otherwise mandatorily retired at age 55) would have granted him the advantage of the enhanced mandatory retirement age of 60 provided for in Laws of 1969 (ch 470). Therefore, there can be no question that, viewed in the light of petitioner's circumstances as they subsequently unfolded, the amendment to Retirement and Social Security Law § 381-b (e) by Laws of 1988 (ch 759) had the effect of limiting the term of petitioner's potential employment with the Division of State Police by three years. Obviously, had they been available to petitioner, those additional three years of service would have enhanced petitioner's ultimate pension benefits.

Contending just that, petitioner argues that Laws of 1988 (ch 759) diminished or impaired his contractual rights in the pension system and thereby violated the Nonimpairment Clause. In *Cook v City of Binghamton* (48 NY2d 323), however, the Court of Appeals considered and rejected an essentially identical claim. There, the plaintiffs argued (as here relevant) that 1977 amendments to General Municipal Law § 207-a, which permitted disabled firemen to be involuntarily retired in advance of the general mandatory retirement age, violated the Nonimpairment Clause by impermissibly impairing and diminishing the benefits of their membership in a public retirement system (*see, Cook v City of Binghamton, supra*, at 332). In rejecting that argument, the Court stated as follows: "It is long settled, however, that the fact that there can be no constitutional impairment of pension system benefits *does not create a constitutional right to stay in public employment*. To do this would place the regulation of public employment beyond the control of any authority, which certainly was not intended by our Constitution" (*id.*, at 332 [emphasis supplied] [citation omitted]). To the very same end, and employing the rationale that an "expectation of remaining in public employment * * * is not within the scope of protection afforded by the Nonimpairment Clause", this Court rejected the contention that Laws of 1984 (ch 661) violated the Nonimpairment Clause by causing a disabled firefighter to receive pension benefits that were lower than those he would otherwise have received

had he remained employed to age 70 (*Lake v Regan*, 135 AD2d 312, 314, *appeal dismissed* 72 NY2d 840, *lv denied* 72 NY2d 807).

We are unpersuaded by the dissent's efforts to distinguish these controlling cases and reliance upon earlier and, in our view, less closely analogous authority. Notably, the Court of Appeals has already observed that, unlike *Cook v City of Binghamton* (*supra*), the cases of *Public Empls. Fedn. v Cuomo* (62 NY2d 450 [involving the refund of retirement contributions upon retirement]), *Kleinfeldt v New York City Employees' Retirement Sys.* (36 NY2d 95 [involving the rate of compensation part of the retirement formula]) and *Birnbaum v New York State Teachers Retirement Sys.* (5 NY2d 1 [involving the calculation of the annuity portion of the retirement allowance]) all "involved changes *directly* related to the retirement benefit" (*Matter of Lippman v Board of Educ.*, 66 NY2d 313, 317 [emphasis in original]). *Brown v New York State Teachers Retirement Sys.* (25 AD2d 344, *affd on opn below* 19 NY2d 779) is a case, as is the present one, where the constitutional challenge was properly rejected.

We conclude that the subject change in the mandatory retirement age was enacted to further a legitimate public policy goal (*see, Lake v Regan, supra*) and that, as in *Cook v City of Binghamton* (*supra*) and *Lake v Regan* (*supra*), petitioner merely seeks to extend the term of his public employment, thereby effecting but a "minor and entirely incidental" influence on his retirement benefits (*Cook v City of Binghamton, supra*, at 332). We therefore affirm Supreme Court's judgment dismissing the petition.

CARDONA, P. J. (dissenting). I respectfully dissent. It is settled law that "[t]he Nonimpairment Clause of the NY Constitution was adopted in order to prevent the reduction of an individual's retirement benefits after he or she had joined a retirement system operated by the State or one of its civil divisions" (*Lake v Regan*, 135 AD2d 312, 314, *appeal dismissed* 72 NY2d 840, *lv denied* 72 NY2d 807). In the instant case, once petitioner elected to join the retirement plan prior to March 31, 1972 pursuant to Retirement and Social Security Law § 381-b, his individual retirement benefits contained in that plan could not be reduced (*see, Lake v Regan, supra*, at 314). Specifically, one of the benefits in that plan permitted him to remain in service until December 31st of the year in which he reached age 60 provided he attained a specified rank by

December 31st of the year in which he reached age 55. Some 16 years later, in 1988, the Legislature amended Retirement and Social Security Law § 381-b (e) (*see*, L 1988, ch 759) mandating retirement at age 57 for all members of the State Police except those who held one of the specified ranks on or before August 31, 1988. Those individuals were permitted to work until age 60. Petitioner did not hold one of the specified ranks on August 31, 1988; however, in 1994, at age 55, he held the rank of Assistant Deputy Superintendent, a rank he maintained until his forced retirement on December 30, 1996.

The majority allows this retroactive reduction of petitioner's pension benefits by employing the rationale applied by the Court of Appeals in *Cook v City of Binghamton* (48 NY2d 323) and this Court in *Lake v Regan* (*supra*), holding that the Nonimpairment Clause does not include the right to remain in public employment nor prohibit the State from establishing mandatory retirement ages (*see*, *Cook v City of Binghamton*, *supra*, at 332; *Lake v Regan*, *supra*, at 314). In my view, the decisions in *Cook* and *Lake* are distinguishable because, unlike the instant case, they involved plaintiffs on disability retirement who were not asserting violations of the Nonimpairment Clause to prevent changes in retirement benefits under plans they initially joined. Instead, they were seeking to extend this constitutional protection in order to prevent the reduction of disability income previously paid to them by operation of General Municipal Law § 207-a.* That statute, as we noted in *Lake*, "was enacted as a matter of public policy and it can be amended without violating the Nonimpairment Clause of the NY Constitution" (*Lake v Regan*, *supra*, at 314; *see*, *Cook v City of Binghamton*, *supra*, at 332).

In the instant case, we have a petitioner who worked for many years with the understanding that, if he fulfilled certain conditions, he would have the potential to retire at age 60. Obviously, he also knew that if he became separated from service prior to satisfying the conditions existing at the time of his entrance into plan membership, as for example through disability, he would only be entitled to receive those retirement benefits accrued up to that point in time (*see*, *Lake v Regan*, 135 AD2d 312, 315, *supra*), as the plan he joined did not provide for anything more. However, when petitioner entered into plan membership, he did not contemplate that any pen-

* We note that *Lake* also involved the interplay of a newly enacted "duty disability retirement" statute (*see*, Retirement and Social Security Law § 363-c [added by L 1984, ch 661, § 1]).

sion entitlement then in existence would be unilaterally stripped away by a change in his retirement plan.

In my view, the option to remain in service until age 60 was an explicit pension benefit, a clear "monetary advantage" (*Brown v New York State Teachers Retirement Sys.*, 25 AD2d 344, 345, *affd on opn below* 19 NY2d 779) under the newly enacted plan which became fixed when he opted to join (*see, Birnbaum v New York State Teachers' Retirement Sys.*, 5 NY2d 1, 9; *Public Empls. Fedn. v Cuomo*, 62 NY2d 450, 460). Like the salary increases which could not be excluded from the determination of a prior member's final average salary in *Kleinfeldt v New York City Employees' Retirement Sys.* (36 NY2d 95), the option to remain in service until age 60 became an integral part of the formula for the computation of petitioner's retirement allowance which could not be impaired nor its value diminished by the retroactive application of the 1988 amendment. When petitioner attained the age of 55 and held the eligible position of Assistant Deputy Superintendent, he fulfilled the conditions existing at the time of his entrance into plan membership under Retirement and Social Security Law § 381-b (former [e]) and, therefore, had a constitutionally protected contractual right to opt to continue to work until age 60.

In my opinion, the application of the 1988 amendment to petitioner constituted an unlawful unilateral reduction of his individual retirement benefits in violation of the Nonimpairment Clause. Accordingly, I would grant the petition, direct respondents to reinstate petitioner to the rank of Assistant Deputy Superintendent, restore all job and service credits from August 9, 1997, reimburse petitioner for all lost salary less pension payments received, and enjoin respondents from involuntarily retiring petitioner from service until December 31, 1999.

MIKOLL, PETERS and CARPINELLO, JJ., concur with MERCURE, J.; CARDONA, P. J., dissents in a separate opinion.

Ordered that the judgment is affirmed, without costs.